63

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK ANTHONY REED-BEY,
          Plaintiff,         *151290*

vs.

Case: 2:06-cv-10934
Assigned To : Roberts, Victoria A
Referral Judge: Capel, Wallace
Assign. Date : 3/1/2006
Description: CMP REED-BEY V
PRAMSTALLER ET AL (SS)

MAG:

JURY TRIAL DEMANDED

GEORGE PRAMSTALLER, RICHARD D. RUSSELL,
BUREAU OF HEALTH SERVICE, FOR (MDOC),
ANY JANE/JOHN DOE'S, CAROLYNN DuBUC,
CORRECTIONAL MEDICAL SERVICES, INC., (CMS),
MICHIGAN DEPARTMENT OF CORRECTIONS, (MDOC),
Sued in their individual and official capacities.
ANDREW JACKSON, S. VADLAMUDI (MSP),
JUSTINA NZUMS, RUTH INGRAM, NURSES JANES DOE'S,
Sued in their individual and official capacities,
          Defendant(s).

---

### 42 U.S.C. § 1983 COMPLAINT

**Preliminary Statement:**

This civil rights action filed by **Mark Anthony Reed-Bey**, #151290, a state prisoner for damages and immediate relief under 42 U.S.C. § 1983, alleging denial of medical treatment in violation of the Eight and Fourteenth Amendments to the United States Constitution. The Plaintiff also alleges that any torts of medical malpractice can also be allege in a 42 U.S.C. § 1983.

-1-

Jurisdiction:

1. The Court has jurisdiction over Plaintiff's claims of violation of federal Constitutional rights under 42 U.S.C. §§ 1331(a), and 1343.

2. The Court has supplemental jurisdiction over the Plaintiff's state law tort claims under 28 U.S.C. § 1367.

**Previous Lawsuits:**

3. There is a civil complaint pending at this time, entitled MARK ANTHONY REED-BEY, aka OMEGAL LEE REED-BEY vs. CASUSO, et al, Civil No: 05-2:05-CV-73911, The case is before the Honorable. George Caram Steeh, Mag. Judge. Steven D. Pepe. Alleging violation of the Plaintiff's Constitutional rights under the First, Eighth and Fourteenth Amendments to the United States Constitution. Plaintiff had filed grievances stating prison violation, failure to allow Plaintiff use of the law library, pursuant to the Policy Directive, access to medical care to receive medication after a major operation, failure to allow Plaintiff to attend his religious meetings. Plaintiff did not receive a reply back pursuant to the Departments certification of the policy directive for grievance procedures, and after writing to the grievance coordinator about this and still not receiving a response, Plaintiff filed a grievance on the coordinator, and first forwarded it to the Step III, Director's Office, Prisoners Affairs Section, who returned it to the Plaintiff with the instruction to file it at the

-2-

Step I within the prison, which the Plaintiff did. The grievance was returned/rejected by the grievance coordinator, with instruction to remove the additional grievance form because, two forms cannot be used to file one grievance, and that the Plaintiff's name as stated on the grievance was not on file. The Plaintiff removed the additional grievance form and attached with the two grievances (one on the grievance coordinator and the other on medical) a copy of his name change papers and sent it back to the grievance coordinator, who still rejected the grievance because of the Plaintiff's name. The Plaintiff then requested the Step II Appeal forms which he never received from the grievance coordinator, so he forwarded the grievances to the Step III, Director's Office Prisoners Affair, who still refuse to review the grievances, telling the Plaintiff to file the grievances at the Step I first. Plaintiff tried all legal means of filing the grievances before filing his civil complaint, but was denied his rights to do so.

### Exhaustion of Administrative Remedies:

4. Grievance filed on October 10, 2005, for the reason of getting medical treatment. Plaintiff informed them at the Step I of the grievance that this was urgent medical treatment that he was requesting. Grievance was received by the grievance coordinator here at the prison on October 12, 2005, with a return date of November 2, 2005, Identifier No NRF 0510-1256-12D-1. (Attached Exhibit A). Plaintiff did not receive a

-3-

response back on the date stated, so wrote and requested the Step II Appeal Form, pursuant to Policy Directive 02.03.130(DD). On November 2, 2005 (Attached Exhibit B). Plaintiff never went for the interview.

5. Plaintiff received the Step II Appeal form on November 3, 2005, he completed the Appeal form and sent it to defendant Carolynn DuBuc, on November 3, 2005, Regional H.U.M. Huron Valley Facility, through the institutional mailing system. (Attached Exhibit C). The Plaintiff did not received the Step I response back until November 18, 2005. (Infer Exhibit A).

6. Defendant Carolynn DuBuc received the Step II Appeal Form on November 9, 2005, in which she had 15 business days to response, or request an extension to further investigate. Pursuant to PD 03.02.130(EE), no extension was requested nor had the Plaintiff received a response back from the defendant by December 6, 2005, so Plaintiff filed the Step III Appeal form to the Director's office Prisoners Affair Section. (Infer Exhibit C). Plaintiff did receive a response back from defendant Carolynn DuBuc on December 28, 2005. Defendant Carolynn DuBuc response was that the Plaintiff's Due Process had been followed. That the Plaintiff had received pain medication other than the Tylenol, and that Plaintiff's care has been consistent with contemporary standards of medical practice in the community. Her response will be address further

-4-

in this civil complaint. Nothing was stated on when the Plaintiff would receive the operation to repair his shoulder. And end his pain and suffering.

7. Because of the medical pain and suffering that Plaintiff have been dealing with the Plaintiff after not receiving any reply back in a timely manner from his Step III Appeal, on January 10, 2006, wrote to Prisoners Affair Section, Bureau of Health Care inquiring about some response to the issues in the grievance that he wrote, so that he could exhaust his administrative remedies. (Attached Exhibit E). Plaintiff have not received any reply to the grievance nor his letter, but hope to have it before the filing of this complaint and will have it attached. If not the Plaintiff have tried to exhaust all his administrative remedies while dealing with a seriously damaged right shoulder.

8. The Defendants named above, namely M.D.O.C. agents and CMS employees have refused to provide health care for Plaintiff, forcing him to bring this action. The actions of the M.D.O.C. and CMS are in violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. Nothing have been done to remedy the Plaintiff's suffering pursuant to the standards in the community, because no individual with a Grade IV AC separation while have to wait months before having it repaired. Nor would an individual in the community have to deal with the pain the Plaintiff have been dealing with daily without some kind of treatment.

-5-

9. Because of the urgencies of the Plaintiff's medical problem, it therefore follows that he went above and beyond the current body of case laws in attempting to exhaust his administrative remedies, before filing this complaint.

**Place Of Confinement:**

10. The Plaintiff is presently incarcerated at the Mound Correctional Facility, 17601 Mound Road, Detroit, Michigan 48212.

11. Plaintiff is presently serving his incarceration after being convicted of First Degree Murder and Felony Firearm, in which the Plaintiff received the mandatory sentences of Life in Prison for the first degree murder and Two years for the felony firearm. Plaintiff have been incarcerated on this conviction since 1989.

**Defendants:**

12. Chief Medical Officer George Pramstaller and Richard D. Russell, work for the State of Michigan under the Department of Corrections, Grandview Plaza Building, P.O. Box 30003, Lansing, Michigan 48909, under the title of Bureau of Health Care Services, which govern each defendant in the medical field, to assure certification under the State Medical Board. To assure that the defendants working under the Bureau of Health Care Services are certified by the State Board. The Bureau of Health Care Services, jointly with MDOC, are assure that all referrals for medical treatment, are granted or denied

-6-

based on the facts of the referral. This is done by Faxing information to the Bureau of Health Care Services which has the authority to grant or deny medical treatment which is MDOC's way of governing off site medical treatment.

12. Correctional Medical Services, Inc (CMS) is a private corporation providing health care on behalf of the MDOC. Acting as the health care provider in this case, they consistently denied or have delayed the Plaintiff's treatment for his Grade IV AC separation, which his clavicle displaced 7mm and his coracoclavicular widened 19mm. Which clearly shows the bone sticking up out of the Plaintiff's right shoulder. Their agents/employees have also failed to follow the instruction which the Plaintiff received from the free world hospital, causing him much additional pain and suffering, this follow-up treatment could have been done in the free world hospital or through MDOC's hospital in Jackson Michigan, (Duane Waters Hospital). The Plaintiff believes that this defendant denied or interfered with his treatment for purely financial reasons, thereby denying his rights under the Eighth Amendment of the U.S. Constitution. This defendant is being sued in its individual and official capacities (the latter for the purposes of injunctive relief). Its mailing address in Michigan is 2378 Wood Lake Dr., Suite 280 Okemos, Michigan, 48864. Their malfeasance may be inferred generally throughout the entirely of this pleading.

-7-

13. Their malfeasance may generally be deduced throughout the body of this action because cost was already the main consideration in failing to approve for Plaintiff's medical treatment. The Plaintiff herein bring it to the attention of the court that this corporation has been sued a multitude of times by individual prisoners, has been named in several class action lawsuits dealing with (inter alia) their lack of treatment/testing of prisoners with serious medical needs where they are present and is currently under investigation by the U.S. Department of Justice.

14. Defendant Carolynn DuBuc, was at all times relevant to this action, H.U.M. (Health Unit Manager) employed by the MDOC/CMS and working at the Huron Valley Correctional Facility under the jurisdiction of the MDOC. As such, defendant failed to respond; One, to a serious medical grievance at the Step II Appeal process in a timely manner, or to inform her employer's of the medical urgency of treatment for the Plaintiff, so that he could receive treatment. She thereby provider inappropriate and inadequate health care to the Plaintiff, when it was clear from all medical records and the grievance that her inactions would cause the Plaintiff continual physical and mental pain and suffering. This defendant is being sued in her individual and official capacities (the latter for the purposes of injunctive relief). Her working/mailing address is, 3201 Bemis Road, Ypsilanti, Michigan 48197.

-8-

15. The MDOC, is a State Governmental agency charged with, **inter alia**, providing a minimum level of health care to those confined in an MDOC institution. They were responsible for bringing in CMS, who acting as the health care provider in this case, consistently have denied or delayed the Plaintiff's medical treatment for his damaged right shoulder and other medical problems that have arise from this shoulder injury. Their agents/employees have failed to follow up with the Plaintiff, after receiving treatment from Detroit Receiving Hospital. Plaintiff was given no aftercare by its employees. This also have, **de minimis**, a duty to ensure that a condition such as Plaintiff's **(Grade IV AC separation)** "Which was only a Grade III injury after treatment at Detroit Receiving Hospital" This agency has also failed to adhere to its our Policy Directive, based upon the fact that the Plaintiff's injury is very serious and continue to cause him pain and suffering daily, the MDOC has failed to respond to the grievance that was written concerning this with in a timely matter to afford the Plaintiff relief from the pain he has been suffering. This agency is therefore guilty of denying the Plaintiff his rights under the Eighth Amendment of the U.S. Constitution. This Defendant is being sued in its official capacity only, and only then for purpose of immediately injunctive relief. Their mailing address is Michigan Department of Corrections, Grandview Plaza Bldg., P.O. Box 30003, Lansing, Michigan 48909.

-9-

16. Defendant Dr. Seetha Vadlamudi, is at all times relevant to this action, a medical doctor employed by the MDOC/CMS and working at the Mound Correctional Facility and under the jurisdiction of the MDOC. Defendant failed to ensure that the Plaintiff had timely, adequate access to a Orthopedic specialist or see the Plaintiff after treatment at Detroit Receiving Hospital or any kind of adequate treatment for his injuried shoulder. Defendant Dr. Vadlamudi did not physical see the Plaintiff until December 2, 2005, As such, Dr. Vadlamudi has continue to provide the Plaintiff with inappropriate and inadequate health care, which also continue to cause the Plaintiff physical and mental pain and suffering daily. This defendant is being sued in her individual and official capacities (the latter for the purposes of injunctive relief). Her working/mailing address is Mound Correctional Facility, 17601 Mound Road, Detroit, Michigan 48212.

17. Defendant Justina Nzums and Ruth Ingram, and the Nurses Jane Does, at all times relevant to this action, and employed by the MDOC/CMS (Correctional Medical Services, Inc.) and working at the Mound Correctional Facility under the jurisdiction of the MDOC, failed to perform their duties appropriately, at the time that the Plaintiff injured his shoulder and after returning from treatment at Detroit Receiving Hospital, causing him physical and mental pain and suffering. These defendants are being sued in this individual and official

-10-

capacities (the latter for purposes on injunctive relief). Their working/mailing address is Mound Correctional Facility, 17601 Mound Road, Detroit Michigan, 48212.

18. Policy Directive 03.02.130(W),(Y): "Prisoners and staff who may be involved in the issue being grieved shall not participate in any capacity in the grievance investigation, review or response, except as necessary to provide information to the respondent.; (Y) impart: If the issue is of an emergent nature, the Grievance Coordinator may order a Step I response within two business days." The above defendant's should not have been involved in the respond of the grievance that was written and there should have been a response much sooner then the 29 days it did take them to response.

19. Defendant Andrew Jackson is the Warden at the Mound Correctional Facility who govern each individual that works within the facility. It is his responsible to ensure that health care is working according to all Policy Procedures, within the MDOC. When problems arise within health care, it is his job/duty to correct them or see that his employers MDOC is aware of the problems, so that they can be corrected. Defendant Jackson is being sued in his individual and official capacities (the latter for purposes of injunctive relief). His mailing/working address is Mound Correctional Facility, 17601 Mound Road, Detroit, Michigan 48212.

-11-

FACTS:

20. On September 12, 2005, at about 6:45 pm while involved in a prison sporting event, the Plaintiff **Mark Anthony Reed-Bey**, was injured, damaging his right shoulder badly, dislocating it and pushing the bones out of place. At the time Plaintiff was in serious pain and did not himself not now much damage was done to his shoulder.

21. Plaintiff was sent back to the housing unit by the yard officers, and informed to have the unit officer contact health care, they were unable to get through to health care. Plaintiff informed them that he would be able to make it back to the unit since there were a few prisoners there to assist.

22. Once Plaintiff reached the housing unit he informed unit officer Lynn of the injury to his shoulder and showed her what appeared at the time to be a bone sticking up out of his right shoulder, it had not broken the skin.

23. Officer Lynn called over to health care about 7:00 pm which she was informed to call back, which she did a few minutes later and was informed to send Plaintiff over during the running of med-lines, she informed who she was speaking to that Plaintiff need medical treatment right then. She was still informed to send him over at med-lines.

24. Officer Lynn then called for a Sergeant to come to the housing unit which one did and she informed him of the problem, and had the Plaintiff show him the damaged shoulder.

-12-

He then called over to health care and informed then of the medical emergency and he was informed that the Plaintiff could not come over until the running of med-lines.

25. Officer Lynn then wrote in the housing unit log book everything that happened and informed the Plaintiff that if there were to be any legal actions, then she had logged everything in the log book.

26 Plaintiff walked over to health care around 8:15 pm in which he was seen by defendant Nurse Doe and given a ice pack to place on the shoulder and then the arm was placed in a sling. (Attached Exhibit F).

27. Plaintiff was informed that he would have to go to Detroit Receiving Hospital. Plaintiff did not leave for the hospital until around 10:15 pm. Plaintiff arrived at Receiving Hospital at 10:33 pm.

28. Plaintiff was examined by Doctor Rosemarie Fernandez, who determined the following: "Patient had right clavicle and shoulder file performed which confirmed AC Separation. Patient is placed in a sling, he is to follow up with Orthopedics. He is given Motrin and Vicodin for pain. He is discharged." (Attached Exhibit G). Discharged Instruction read as follow: "AC Separation. This injury is the separation of two of the bones in your shoulder. The separation tore some of the ligaments (rope-like tissue) that hold the shoulder firmly together. It should heal well if protected." also stated is that the prison should contact Orthopedic Clinic in 5 days, but a appointment should be made with a Orthopedic Specialist.

-13-

29. Plaintiff returned back to the Mound Correctional Facility around 2:00 am on 9/13/05 and was seen by nurse Green, who placed the Plaintiff on a two week medical lay-in. And informed Plaintiff that he would be seen by the doctor or some one in the morning.

30. Plaintiff on September 28, 2005, wrote a Health Care Request Form asking to be seen by anyone concerning his damaged shoulder, explaining to them what happened to the shoulder and that he was in pain. Plaintiff was never called out by anyone or did he receive a reply back from his Health Care Form.

31. Plaintiff around October 6, 2005, wrote to Health Care against, using the forms available, asking about when he would be seen about his injured shoulder. He did not receive any reply from that health care request neither.

32. Plaintiff was called out on October 12, 2005, for his annual screen, by nurse Moore, while taking his vital signs the Plaintiff ask her whether he would get an opportunity to see the doctor about his shoulder? She asked, Why? The Plaintiff removed his shirt and showed her the bone sticking up in his shoulder. She asked the Plaintiff when did that happen? The Plaintiff explained to her what had happened on September 12, 2005, and about the Health Care Request Forms he had been sending in but have heard nothing back from any of them. Plaintiff also told her about the grievance that he had written

-14-

on October 10th, because he was being denied medical treatment and he was in continual pain and unable to lay down because of the pain. Nurse Moore left the room and went to speak with defendant Ingram or Nzums, then returned and informed the Plaintiff that he would be seen by defendant Dr. Seetha Vadlamudi (MSP) on October 21, 2005. Plaintiff was told that he would be place on some pain medication, which was Tylenol ES 500mg which he received on October 15, 2005. (Attached Exhibit I).

33. On October 21, 2005 Plaintiff was called out to health care and saw by nurse Moore, who told the Plaintiff that defendant Dr. Vadlamudi did not want to see him but would see him on October 25, 2005.

34. Plaintiff was called out of October 25, 2005 and the only person he saw was the X-Ray tech, who took X-Rays of his shoulder.

35. Plaintiff received a copy of the Radiology Report, dated October 26, 2005, the Plaintiff learned that the damage shoulder had progress from a Grade III AC Separation to the following: "Grade IV AC Separation present, Associated coracoclavicular ligament tear." (Attached Exhibit J).

36. Plaintiff continued to send Health Care Request forms in asking to be seen by a doctor or anyone for that matter, who could tell him when he would receive treatment to fix his damaged shoulder. Plaintiff did not receive any reply back to most of his request.

-15-

37. On December 1, 2005, Plaintiff was sent to Duane Waters Hospital, in Jackson Michigan, were he was seen by the Orthopedic Specialist, who informed the Plaintiff that the damage to his shoulder was serious, and that the headaches that he was having would continue until something could be done about the shoulder. Plaintiff would get headaches that would last for up to three days, which he explained this in his health care request forms at Mound Correctional Facility. Plaintiff also explained to the Specialist that he was placed on Tylenol ES 500mg and that they only helped a little with the pain and headaches but he had been out of them since November 14, 2005 and had just been dealing with the pain. The Specialist put the Plaintiff on pain medication and told the Plaintiff that until they approved for him to come back for the operation, to write a health care requesting every day if he had to whether he was approved for the operation. Plaintiff was only placed on the pain medication for seven days.

38. The Plaintiff asked the Orthopedic Specialist, why was he having so much pain because of the damaged to the shoulder? He explained that the shoulder had healed wrong and was tearing the ligaments in the shoulder every time he moved.

39. On December 2, 2005, Plaintiff was called out by defendant Dr. Vadlamudi, and informed that she was sending the request in to defendants Correctional Medical Service, Inc., (CMS), for approval of the operation and that she had sent the

-16-

request in before and had not heard anything from them concerning approval. Plaintiff also on that day received a copy of the medical records that he had requested, which showed that the request that was sent into (CMS) by defendant Vadlamudi was not sent in when she told the Plaintiff she had first sent it. She stated that she had sent the request to them around October 5, 2005. (Attached Exhibit K).

40. The request that she sent in was only for review by the Orthopedic Specialist. The time stamped of the request, stated that the Bureau of Health Service and (CMS) was sent this information on November 10, 2005 at 12:39 pm. (Infer Exhibit K).

41. Plaintiff on December 8, 14, and 19, sent in health care request forms asking had there been approval for him to get the operation for his shoulder, and informing health care staff about the pain that he was in, that is was getting worst. Plaintiff only received a reply back to the health care request form dated 12/19/05. Which informed that Plaintiff that he was scheduled for appointment on January 25, 2006 with one of the RN's. (Attached Exhibit L).

42. Plaintiff on January 9, 2006, wrote other health care request form and sent it to health care about the pain he was dealing with. That he was having very painful headaches that started at the base of his shoulder and went up to his temple only on the right side and they lasted

-17-

for days. Plaintiff was on call for health care on January 10, 2006, he was called over earlier for the appontment which was scheduled for 1:30 pm, but he went at 10:00 am. He was told by defendant nurse Jane Doe, that the defendant Doctor did not need to see him, they had thought he had received the operation and was calling him out for follow-up. Plaintiff did have the opportunity to tell defendant nurse Jane Doe about the headaches and ask for something for them and was told, "You have to wait until you see the Doctor, there was nothing she could do." Plaintiff ask if he could just speak with defendant Doctor and she replied the Doctor was busy she would call Plaintiff out later. Plaintiff was never called out.

Claim For Relief:

43. Paragraphs 4 through 42 and all exhibits pertaining thereto are incorporated herein.

44. That as a result of the actions of Defendants as well as their reckless, callous and deliberate indifference, arbitrary and capricious action, biased action in contravention of due diligence to basic medical need-all while acting under color of state law-deprived the Plaintiff, a citizen of the United States of his rights to be free from cruel and unusual punishment, in contravention of the Eighth Amendment of the United States Constitution and 42 U.S.C. § 1983. The Plaintiff was never sentence by the control court system to have to

-18-

suffer this kind of physical and mental pain. The Plaintiff has been suffering continuously from this injury, he has been in mental pain, mental anguish and emotional distress due to the action/omission of the defendants.

Relief Requested:

A. Issue a Declaratory Judgment Stating:

1. That all defendants failed to provide medical treatment to the Plaintiff, violating and continuing to violate the Plaintiff's rights under the Eighth Amendment to the United States Constitution.

B. Issue an Injunctive Ordering Defendants:

George Pramstaller, Richard D. Russell, Any Jane/John Doe's, Bureau of Health Service, Correctional Medical Service, Inc., (CMS).

1. To Immediately arrange for the Plaintiff to have the operation for his damaged shoulder done within a 30 day period of the order, by one of the following, Orthopedic Specialist from DRH/UHC at 4201 St. Antonie or if the defendant believe that it will be a security concern, then have it performed by the Orthopedic Specialist at Duane Waters Hospital, who on December 1, 2005, informed the Plaintiff that it was important that he received the operation as soon as possible, any way.

2. After completion of the operation, return the Plaintiff to the Mound Correctional Facility Immediately, until completion of this civil litigation.

-19-

3. Arrange for Plaintiff to receive any and all medical treatment ordered by the Doctor that will perform the operation, after returning to the Mound Correctional Facility.

C. Issue Injunctive Relief Ordering:

Defendants Nurse Jane Doe's, Dr. Seetha Vadlamudi, Justina Nzums, Ruth Ingram:

1. Be removed from working within the Mound Correctional Facility for a continual failure to follow the minimum standards set forth for medical personnel in their field of health care. For allowing the Plaintiff to have to continue to suffer daily without any kind of medical treatment. For showing daily a deliberate indifference to the Plaintiff's pain and suffering.

D. Award Compensatory Damages in the Amounts:

1. Ten Million Dollars, against defendant Correctional Medical Service Inc., (CMS), for the physical and mental injuries and capricious actions of delaying/refusing medical treatment to the Plaintiff for his seriously damaged right shoulder.

2. Five Million Dollars jointly and severally against defendants, George Pramstaller, Richard D. Russell, Jane/John Doe's for the physical and mental injuries sustained as a result of their denying/delaying the Plaintiff medical treatment for his seriously damaged right shoulder.

3. Six Million Dollars jointly and severally against defendants Seetha Vadlamudi, Ruth Ingram, Justina Nzums, and

-20-

all Nurse Jane Doe's, for the physical, mental and emotional injuries sustained as a result of their denying/delaying and just not treating the Plaintiff at all for his seriously damaged right shoulder. For allowing the Plaintiff to suffer with physical and mental pain daily.

**E. Award Punitive Damages in the Amounts:**

1. Ten Million Dollars against Defendant Correctional Medical Service Inc., (CMS).

2. Five Million Dollars each against defendants George Pramstaller, Richard D. Russell, all Jane/John Doe's.

3. Four Million Dollars each against defendants Andrew Jackson, Carolynn DuBuc, Seetha Vadlamudi.

4. Three Million Dollars each against defendants Ruth Ingram, Justina Nzums, and all Nurse Jane Doe's.

**F.** Grant such other relief as it may appear that Plaintiff is entitled by law.

**Note:** All Defendants named as Jane and John Doe's are individuals that the Plaintiff do not know their names at this time, but will add their full names after completion of discovery.

Date: _February 16_, 2006          Submitted by:

Mark Anthony Reed-Bey #151290
Mound Correctional Facility
17601 Mound Road
Detroit, Michigan 48212

-21-

Exhibit - A

MICHIGAN DEPARTMENT OF CORRECTIONS
PRISONER/PAROLEE GRIEVANCE FORM

4835-4247  10/94
CSJ-247A

Date Received at Step I ___ Grievance Coordinator's Office ___ Grievance Identifier: |N|R|F|O|5|1|1|0| |1|1|2|5|6|1|2|0|1|1|

| Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library. | | | | | |
|---|---|---|---|---|---|
| Name (print first, last)<br>**Omega Lee Reed-Bey<br>aka Mark Anthony Reed-Bey** | Number<br>**#151290** | Institution<br>**NRF** | Lock Number<br>**4A-13U** | Date of Incident<br>**9/30/05** | Today's Date<br>**10/10/05** |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? **9/30/05**
If none, explain why.

**Wrote three health Care request, and have not heard anything.**

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.

**On 9/12/05, I damage my right shoulder while involved in a sporting event, badly, I was taken to Receiving Hospital were I was treated. I was returned back to the prison but was informed that I would have to see a specialist concerning the damage to the shoulder, I was placed on a medical lay-in, after returning to the prison, and that was it. I've had no follow-up from medical concerning the shoulder, I have written three medical request forms concerning the pain in my shoulder which is causing severe pain to my neck and causing headaches daily just on the right side. The shoulder itself I only have limited movement with it. It has popped out of the joint twice, while I was sleeping. I have not heard anything from medical concerning a schedule appointment with anyone. I cannot take the pain in this shoulder much longer, before I will have not choice but to request the court to step in to get treatment. The pain daily has become to unbearable, and this is in complete violation of Department Policy Directive as well as Human health services. I have waited without complain until now.**

_Grievant's Signature_

RESPONSE (Grievant Interviewed?   ☐ Yes   ☑ No      If No, give explanation. If resolved, explain resolution.)

*No show*

_Respondent's Signature_ ___ Date **10/28/05**   _Reviewer's Signature_ R. Ingram, Hun ___ Date **10/28/05**

_Respondent's Name (Print)_ ___ Working Title **RN**   _Reviewer's Name (Print)_ R. Ingram ___ Working Title **Hun**

| Date Returned to<br>**NOV 1 8 2005** | If resolved at Step I, Grievant sign here.<br>Resolution must be described above. | _No show_<br>Grievant's Signature | **10/28/05**<br>Date |
|---|---|---|---|

DISTRIBUTION:   White, Green, Canary, Pink — Process to Step One; Goldenrod — Grievant

# Step I Grievance Response

| | |
|---|---|
| Grievance Number: | NRF 0510 1256 12D-1 |
| Prisoner Name: | REED |
| Prisoner Number: | 151290 |

| | | | | |
|---|---|---|---|---|
| Prisoner | ☐ was | ☒ | was NOT interviewed. GIVE REASON: | No show for grievance interview |

**SUMMARY OF COMPLAINT:**

See attached

**INVESTIGATION INFORMATION**

Form CHJ 407 has been generated by the MSP for orthopedic consult. Approval/authorization from CMS is being awaited at this time.

**APPLICABLE POLICY, PROCEDURE, ETC.**

Treated per policy 03.04.100.

**SUMMARY**

Prisoner will scheduled pending CMS approval.

| RESPONDENT NAME: | J. Nzums, RN | TITLE: | Supervisor |
|---|---|---|---|
| RESPONDENT SIGNATURE: | | DATE: | 10/28/05 |

| REVIEWER NAME: | R. Ingram, RN | TITLE: | Health Unit Manager |
|---|---|---|---|
| REVIEWER SIGNATURE: | | DATE: | 10/28/05 |

**Exhibit - B**

TO:    Grievance Coordinator: S. White

FROM:  Omega Lee Reed-Bey #151290
       aka Mark Anthony Reed-Bey

RE:    STEP II APPEAL FORM


        I filed a grievance on medical care which your office received on 10/12/05, with a response date no later than 11/02/05, As of that date I have not received a response. I do not agreed to an extension on the date that I was to receive this response. So I am how requesting the Step II appeal form for the following grievance: NRF 0510 1256 12D-1.

        I am also requesting for the second time the Step II appeal form for the following grievance which I have never received from your office, which I wrote requesting on 7/27/05: NRF 0507 0801 14A


Dated: November 2, 2005

Omega Lee Reed-Bey #151290
aka Mark Anthony Reed-Bey
4A-13U

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 12/19/2003 | 03.02.130 | PAGE 5 OF 8 |

was rejected. In CFA, if the grievance is being rejected because it presents a non-grievable issue, the Grievance Coordinator's supervisor shall review the reason for the rejection to ensure it is in accordance with policy; both the Grievance Coordinator and the supervisor are required to sign the grievance before returning the grievance to the grievant. If the grievance is accepted, the Grievance Coordinator shall assign an appropriate respondent and identify the date by which the response is due. The due date shall be within 15 business days after receipt of the grievance, unless an extension is granted pursuant to Paragraph U. If the issue is of an emergent nature, the Grievance Coordinator may order a Step I response within two business days. The Grievance Coordinator may respond at Step I to grievances which require only minimal investigation or rejected for reasons authorized by this policy. However, if the Grievance Coordinator responds to the merits of the grievance, a grievance interview must be conducted as required in Paragraph AA.

Z.   The respondent assigned pursuant to Paragraph Y shall generally be the supervisor of the person being grieved. The OPH Administrator shall designate a respondent for grievances involving OPH hearing officers and hearings conducted by OPH. The respondent for grievances involving the Parole Board shall be designated by the Parole Board Chairperson.

AA.   The respondent shall interview the grievant unless s/he refuses to participate in the interview, the respondent is not assigned to the location at which the grievant is confined, or, if the grievant is on parole in the community, the respondent does not have ready access to the field office to which the grievant is assigned. If the grievant is not interviewed, the reason shall be included in the written response to the grievance. The grievant shall have the opportunity to explain the grievance more completely at the interview, enabling the Step I respondent to gather any additional information needed to respond to the grievance. The interview also provides the opportunity to resolve the grievance to the mutual satisfaction of the grievant and the Department.

BB.   The respondent shall identify in the response the policies, rules or procedures that are directly related to the issue or conduct being grieved. Each Step I grievance response shall be reviewed by the respondent's supervisor prior to the grievance being returned to the Step I Grievance Coordinator to ensure that it appropriately addresses the issue raised in the grievance and accurately reflects Department policy and procedure. Where there is limited staffing in an FOA field office, corrections center or TRV, the requirement for supervisory review of a Step I response shall not apply if the response is prepared by an FOA supervisor/manager.

CC.   The Step I Grievance Coordinator shall ensure that a thorough investigation was completed for each Step I grievance accepted, that the response was reviewed by the appropriate supervisor and that a copy of the response is provided to the grievant by the due date, including any extension granted.

Step II

DD.   If a grievant is dissatisfied with the response received at Step I or does not receive a timely response, s/he may request a Prisoner/Parolee Grievance Appeal form (CSJ-247B) from the Step I Grievance Coordinator within five business days after receiving the Step I response or, if no response was received, within five business days after the date the response was due, including any extensions. The grievant must send the completed form CSJ-247B to the Step II Grievance Coordinator designated for the facility, field office or other office being grieved within five business days after receiving the CSJ-247B from the Step I Grievance Coordinator. If the office being grieved does not have a designated Grievance Coordinator, the grievant is to send the grievance to the Step II Grievance Coordinator for the facility in which s/he is housed or appropriate field office for processing.

# Exhibit - C

MICHIGAN DEPARTMENT OF CORRECTIONS
PRISONER/PAROLEE GRIEVANCE APPEAL FORM

4835-4248 12/97
CSJ-247 B

Date Received by Grievance Coordinator
at Step II: _____

Grievance Identifier [N _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ ]

INSTRUCTIONS: THIS FORM IS ONLY TO BE USED TO APPEAL A STEP I GRIEVANCE.
The white copy of the Prisoner/Parolee Grievance Form CSJ-247A (or the goldenrod copy if you have not been provided with a Step I response in a timely manner) MUST be attached to the white copy of this form if you appeal it at both Step II and Step III.

If you should decide to appeal the Step I grievance response to Step II, your appeal should be directed to _____ _____ by _____. If it is not submitted by this date, it will be considered terminated.

If you should decide to appeal the response you receive at Step II, you should send your Step III Appeal to the Director's Office, P.O. Box 30003, Lansing, Michigan, 48909.

| Name (first, last) Daoud Lee Beey-Bey Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|
| Musab _____ 151272 | N. I. | 41 124 | 9/30/05 | 11/3/05 |

STEP II - Reason for Appeal
I have not received the Step I response, pursuant to the deadline date of 11/02/05. See Step I for facts. On 10/12/05 I was called out for my yearly checkup, and I informed nurse Monroe of the problems with my shoulder, and that I was in continuous pain. I also showed her the bone that is sticking out. She asked me a number of times had I seen the doctor since breaking the shoulder. I told her no. She then checked with nurse Supervisor Justina Azuma. She came back and informed me that I would be placed on call to see the doctor for 10/21/05. I was called out on that date and was only seen by nurse Monroe. She informed me that the doctor would not see me, and that I would have x-rays done on 10/25, which I have had done. The Dr. Vadlamudi, has

STEP II - Response

| | Date Received by Step II Respondent: |
| | Date Returned to Grievant: |

Respondent's Name (Print) _____ Respondent's Signature _____ Date _____

STEP III - Reason for Appeal
This is being sent to the Step III procedure because there have been no respond to the Step II appeal that was forwarded to Carolynn DuBuc on 11/8/05, pursuant to PD 03.02.130(EE). There have been no extension request at no time doing the filing of this grievance. I did not receive the respond back from the Step I until 11/18/05.
I would like to know why I have been denied medical treatment for shoulder separation damage AC, for four months.

NOTE: Only a copy of this appeal and the response will be returned to you.

STEP III - Director's Response is attached as a separate sheet.

If you find the Step III Director's response unsatisfactory, you have the option of referring the grievance to the Office of Legislative Corrections Ombudsman, 4th Floor, Capitol Hall, 115 W. Allegan, Lansing, Michigan, 48913.

DISTRIBUTION: White--Central Office; Green - Canary --Step III; Pink--Step II; Goldenrod--Grievant

only prescribe Tylenol ES 500mg since finding out about the shoulder. Because of the damage to the shoulder, the movement in me neck has become very limited, I keep a headache, and the movement of my arm is very limited. And I still haven't seen a doctor. I know that the Doctor at Receiving Hospital scheduled for me to see a Orthopedic specialist because of possible nerve damage. I know there is nerve damage to this shoulder and I have not been seen by anyone. Before I when for my yearly check-up, no one in medical cared about this bone sticking out of my shoulder or knew about it. Everything dealing with the problems I have been having from the braking of the shoulder to daily pain has been log in the institutional log-book by the unit officers.

# Exhibit - D

MICHIGAN DEPARTMENT OF CORRECTIONS

NOV 0 2 2005

4835-4248 12/97
CSJ-247 B

PRISONER/PAROLEE GRIEVANCE APPEAL FORM

Date Received by Grievance Coordinator
at Step II: _____

Grievance Identifier N R F 0 5 1 0 1 1 2 5 6 1 2 D 1

**Received**

INSTRUCTIONS:  THIS FORM IS ONLY TO BE USED TO APPEAL A STEP I GRIEVANCE.
The white copy of the Prisoner/Parolee Grievance Form CSJ-247A (or the goldenrod copy if you have not been provided with a Step I response in a timely manner) MUST be attached to the white copy of this form if you appeal it at both Step II and Step III.

NOV 0 9 2005

Region III
Health Services

If you should decide to appeal the Step I grievance response to Step II, your appeal should be directed to: C. DuBuc-Region of Hum@HuronValley Fac. by 11/09/05 . If it is not submitted by this date, it will be considered terminated.

If you should decide to appeal the response you receive at Step II, you should send your Step III Appeal to the Director's Office, P.O. Box 30003, Lansing, Michigan, 48909.

| Name (first, last) Omega Lee Reed- Mark Reed-Bey | Number 151292 | Institution N.R.F. | Lock Number 4A-134 | Date of Incident 9/30/05 | Today's Date 11/3/05 |
|---|---|---|---|---|---|

STEP II--Reason for Appeal
I have not received the Step I response, pursuant to the deadline date of 11/02/05. See Step I for facts. On 10/12/05 I was called out for my yearly check-up, and I informed nurse Monroe of the problems with my shoulder, and that I was in continuous pain. I also showed her the bone that is sticking out. She asked me a number of times had I seen the doctor since braking the shoulder, I told her no. She then checked with nurse Supervisor Justina Nzums. She came back and informed me that I would be placed on call to see the doctor for 10/21/05. I was called out on that date and was only seen by nurse Monroe, who informed me that the doctor would not see me, and they I would have Xrays done on 10/25, which I have had done. The Dr. Vadlamudi, has

| STEP II--Response | Date Received by Step II Respondent: 11-9-05 |
|---|---|

SEE ATTACHED

| Caroline DuBuc | Carol A Br | 12/13/05 | Date Returned to Grievant: |
|---|---|---|---|
| Respondent's Name (Print) | Respondent's Signature | Date | |

STEP III--Reason for Appeal

NOTE:  Only a copy of this appeal and the response will be returned to you.

STEP III--Director's Response  is attached as a separate sheet.

If you find the Step III Director's response unsatisfactory, you have the option of referring the grievance to the Office of Legislative Corrections Ombudsman, 4th Floor, Capitol Hall, 115 W. Allegan, Lansing, Michigan, 48913.

DISTRIBUTION:   White--Central Office;  Green - Canary --Step III;  Pink--Step II;  Goldenrod--Grievant

*RECEIVED 12/28/05*

## MICHIGAN DEPARTMENT OF CORRECTIONS

### *Expecting Excellence Every Day*

### MEMORANDUM

**DATE:**       December 13, 2005

**TO:**          Reed, Mark # 151290

**FROM:**       Carolynn DuBuc, RN, MS
                Region III Health Care Administration

**SUBJECT:**    Step II Grievance Response
                Grievance # NRF 05-10-1256-12D1

I have reviewed your Step I Grievance, the Step I Grievance Response and your Step II Reason for Appeal. You were interviewed by J. Nzums, RN, supervisor on 10-28-05.

At Step I you allege that you have ongoing pain from a shoulder injury and have not received a specialist appointment yet. You state that the pain is worsening.

The Step I response was that the request for an orthopedic appointment has been made and is pending. You will be notified when the response is received.

At Step II you allege that as of 11-01 you had not yet received a response. You state that the physician at the hospital scheduled an appointment at the orthopedic specialist office, but you have not gone to this appointment. You state that a nurse saw your shoulder on 10-12-05. You state that the physician has not seen you and the Tylenol prescribed is ineffective.

I have reviewed the medical record and investigation reveals that:
1. The hospital physician cannot schedule appointments because outside physicians act as consultants only. Your facility physician is your "attending" and writes all orders.
2. On 9-13-05 you were provided with Vicodin and Motrin (local pharmacy called).
3. On 10-12-05 you were seen in Health Care for your annual health screen, and referred to the physician for your complaints of shoulder pain.
4. On 11-01-05 information was faxed and further information was faxed on 11-08.
5. On 11-10-05 the authorization was received.
6. The 11-16-05 note states that the 11-23-05 appointment has been changed to 12-01-05, per CMS (the medical management agency) for the DWH orthopedic consult.

In conclusion, the orthopedic consult required approval, which has been received and your appointment was 12-01-05. Due process was followed. You have received pain medication (other than Tylenol). Your care has been consistent with contemporary standards of medical practice in the community.

Grievance: Resolved

# Exhibit - E

TO:      PRISONERS AFFAIR SECTION, DIRECTOR'S OFFICE
FROM:    MARK ANTHONY REED-BEY #151290, NRF
RE:      NRF 0510 1256 12D-1
RE:      EXHAUSTION OF ADMINISTRATIVE REMEDIES
DATE:    JANUARY 10, 2006

Mr. James Armstrong:

I am writing concerning the above entitled grievance that was sent into your office around December 6, 2005, after not receiving a response back from the Step II Appeal, pursuant to PD 02.03.130(EE), 15 business days. There was never any request for an extension concerning the issues of the grievance.

Around December 28 2005, I receive the Step II response back from Carolynn DuBuc Regional H.U.M.

I have been a waiting a response back from the Bureau of Health Care Services, Director, George Pramstaller or Richard D. Russell, concerning the denial of medical treatment, to exhaust all administrative remedies, and as of the filing of this letter, I still have not received any reply within a timely manner pursuant to PD 02.03.130(II) which also allows 15 business days for response. If for some reason the Bureau of Health Care or medical services as a whole do not consider this to be a medical emergence, then litigation will have to determine that fact. But, I can not continue to have to live with the pain daily without some medical treatment.

Please understand that this letter is for the reason of finding out the resolve of the Step III response, so that all Administrative remedies have been exhausted for 42 U.S.C. § 1997(e).

cc:

Mark Anthony Reed-Bey #151290

**Exhibit - F**

·Services

MOUND CORRECTIONAL FACILITY
HEALTH CARE UNIT
17601 MOUND ROAD
DETROIT, MI 48212

CHJ-410 4/98 PILOT 5/2/97

## REPORT OF EMERGENCY DEPARTMENT (ED) VISIT
(To be completed by correctional facility staff immediately)

(1) DATE OF VISIT: 9/13/05        TIME SENT: 2100 a.m./p.m.

(2) NAME: _____ (3) PRISONER NUMBER: 151290   (4) F☐ M☒
        (Last)      (First)    (Middle Initial)

(5) DOB: 10/23/51   (6) REFERRING INSTITUTION IDENTIFICATION: NRF

(7) VISIT AUTHORIZED BY: Dr. Smith

(8) HOSPITAL SENT TO: Detroit Receiving Hospital

(9) STATEMENT OF PROBLEM/PERTINENT FINDINGS REQUIRING ED VISIT: _Patient was playing_
_basketball + another player pushed him/his_
_arm behind causing this right shoulder_
_to strike the metal pole. Patient has_
_severe pain on the R shoulder at the_
_AC joint. BP 131/92  P 67_
_on Xanax meds. Sling + ice applied_
_to shoulder. Transport to DRH_
_____ J. Wesley R.N._

(10) ALLERGIES ( List All ) : NKA

(11) DIAGNOSIS AND TREATMENT (from ED encounter form or attach copy of ED discharge notes):

_____

_____

_____

_____

(12) ADMISSION STATUS: Was Patient Admitted? ☐ Yes        ☐ No

If Yes, Admitting Physician's name: _____

If No, is any follow-up necessary?   ☐ Yes  ☐ No

Follow-up service(s) needed: _____

Recommended time frame for follow-up: _____

(13) COMPLETED BY_____        DATE_____

Please FAX this completed form to CMS's UM section, Michigan Office (517) 381-9597.

┌─────────────────────────┐
│ Authorization Number    │
│ (CMS Use Only)          │
└─────────────────────────┘

Exhibit - G

Emergency Treatment Note                REED, MARK - H-844004648

Result type:          Emergency Treatment Note
Result date:          September 12, 2005 10:33 PM
Result status:        Auth (Verified)
Result title:         EDD
Performed by:         FERNANDEZ, ROSEMARIE on September 13, 2005 12:25 AM
Verified by:          FERNANDEZ, ROSEMARIE on September 21, 2005 9:48 AM
Encounter info:       682060157, DRHUHC, Emergency-Active, 9/12/2005 - 9/13/2005

## * Final Report *

**EDD**

                      Detroit Receiving Hospital


PATIENT NAME: REED, MARK
DATE AND TIME OF ED REG: 09/12/2005 10:33PM
MEDICAL RECORD NUM: 841012487
CHART NUM: 682060157 DATE AND TIME OF ED EXAM: 09/12/2005 11:36PM
AGE: 45y
RACE: Black
SEX: M
PATIENT DOB: 10/23/1959
FINAL IMPRESSION(S)/DIAGNOSES:
 Right acromioclavicular separation.
HISTORY:

CHIEF COMPLAINT(S):
 Shoulder pain.
HISTORY OF PRESENT ILLNESS:
 A 46-year-old gentleman with no significant past medical history. Comes in today
because he was playing ball at prison when he was pushed into a pole and now
complains of severe right shoulder pain. Denies any chest pain, back pain, neck
pain, headache. Did not lose consciousness. Patient had ice applied and was
transferred here for further evaluation.
REVIEW OF SYSTEMS:

A complete review of systems as documented in this emergency department medical
record has been reviewed and confirmed by me.  Those systems with pertinent
positive or pertinent negative responses have been documented in the HPI. All other
systems are negative except as noted.
PAST MEDICAL, FAMILY, AND/OR SOCIAL HISTORY:

PAST MEDICAL HISTORY: None.
MEDICATIONS: None.
ALLERGIES: None.
FAMILY HISTORY: Noncontributory.
SOCIAL HISTORY: Patient is currently in Mounds correctional facility.
EXAMINATION OF ORGAN SYSTEMS/BODY AREAS:


Vital Signs- 141/88, 53, 12. GCS 15. A well-developed gentleman, alert and oriented
x 3. C, T and LS-spine nontender to palpation. Neck is supple. Patient has
tenderness to palpation over his AC joint on the right. He has no tenderness to
palpation over his actual shoulder joint. He has no scapular tenderness. He does

# Emergency Treatment Note

## REED, MARK - H-844004648

have some mild anterior and distal clavicular tenderness. No obvious deformities are noted. Strength is intact distally with sensation intact throughout.
MEDICAL DECISION MAKING:

COURSE IN THE ED WITH INTERPRETATION/REVIEW OF DIAGNOSTIC STUDIES:
 Patient had right clavicle and shoulder film performed which confirmed AC separation.
 Patient is placed in a sling, he is to follow up with orthopedics. He is given Motrin and Vicodin for pain. He is discharged home.
DISPOSITION:
 1. Discharged in good condition. 2. Ice the sore area. 3. Sling as instructed. 4. Follow up with orthopedics. 5. Return with any worsening symptoms or other concerns.

FERNANDEZ, M.D., ROSEMARIE 053 DICTATION DATE/TIME (EST):      09/13/2005 00:25AM
TRANSCRIPTION DATE/TIME(CST):
 09/13/2005 16:19:38   By BURTONL


**Completed Action List:**
* Perform by FERNANDEZ, ROSEMARIE on September 13, 2005 12:25 AM
* Transcribe by TRANSCRIPTION, EPDS on September 13, 2005 5:19 PM
* Sign by FERNANDEZ, ROSEMARIE on September 21, 2005 9:48 AM  September 21, 2005 9:48 AM
* VERIFY by FERNANDEZ, ROSEMARIE on September 21, 2005 9:48 AM

Clavicle-Right

REED, MARK - H-844004648

Result type:       Clavicle-Right
Result date:       September 12, 2005 11:59 PM
Result status:     Auth (Verified)
Performed by:      RICE, LEON D on September 12, 2005 11:59 PM
Verified by:       HILLMAN, GERALD M on September 13, 2005 6:56 PM
Encounter info:    682060157, DRHUHC, Emergency-Active, 9/12/2005 - 9/13/2005

## * Final Report *

**Reason For Exam**
Injury

**DX Report**
~959.2

EXAM: RIGHT SHOULDER AND RIGHT CLAVICLE 9/12/05

HISTORY: Injury.

TECHNIQUE: Four views of the right shoulder and three views of the right clavicle were obtained.

FINDINGS: There is no fracture or glenohumeral dislocation. The clavicle is displaced 7 mm superiorly, relative to the acromion process. The coracoclavicular distance is also widened measuring 19 mm.

No radiopaque foreign body in the soft tissues.

**IMPRESSION:**
1. **No fracture or glenohumeral dislocation.**
2. **Grade III AC joint injury.**

mwps/kap/7343372

**Signature Line**
FINAL
Dictated By:    RATHOD, FALGUN MD
And Verified By:  GERALD M. HILLMAN MD

Electronically Signed Date:  09/13/05 18:56
Date Transcribed:  KAP     09/13/05 06:43

Thank you for the opportunity to participate in the health care of this patient.

Printed by:     BENNETT, ANDREA
Printed on:     10/6/2005 3:06 PM

Page 1 of 2
(Continued)

Clavicle-Right                                            REED, MARK - H-844004648

Please feel free to contact me if you would like to discuss this study.

"I certify that I personally viewed the images and performed the interpretation of this procedure."

**Completed Action List:**
* Perform by RICE, LEON D on September 12, 2005 11:59 PM
* Order by FERNANDEZ, ROSEMARIE on September 12, 2005 11:08 PM
* VERIFY by HILLMAN, GERALD M on September 13, 2005 6:56 PM

Shoulder (Complete)-Right                    REED, MARK - H-844004648

Result type:        Shoulder (Complete)-Right
Result date:        September 12, 2005 11:59 PM
Result status:      Auth (Verified)
Performed by:       RICE, LEON D on September 12, 2005 11:59 PM
Verified by:        HILLMAN, GERALD M on September 13, 2005 6:56 PM
Encounter info:     682060157, DRHUHC, Emergency-Active, 9/12/2005 - 9/13/2005

## * Final Report *

**Reason For Exam**
Injury

**DX Report**
~959.2

EXAM:  RIGHT SHOULDER AND RIGHT CLAVICLE 9/12/05

HISTORY:  Injury.

TECHNIQUE:  Four views of the right shoulder and three views of the right clavicle were obtained.

FINDINGS:  There is no fracture or glenohumeral dislocation.  The clavicle is displaced 7 mm superiorly, relative to the acromion process.  The coracoclavicular distance is also widened measuring 19 mm.

No radiopaque foreign body in the soft tissues.

**IMPRESSION:**
1. **No fracture or glenohumeral dislocation.**
2. **Grade III AC joint injury.**

mwps/kap/7343372

**Signature Line**
FINAL
Dictated By:     RATHOD, FALGUN MD
And Verified By:  GERALD M. HILLMAN  MD

Electronically Signed Date:  09/13/05 18:56
Date Transcribed:  KAP      09/13/05 06:43

Thank you for the opportunity to participate in the health care of this patient.

Printed by:     BENNETT, ANDREA                        Page 1 of 2
Printed on:     10/6/2005 3:07 PM                       (Continued)

Shoulder (Complete)-Right                          REED, MARK - H-844004648

Please feel free to contact me if you would like to discuss this study.

"I certify that I personally viewed the images and performed the interpretation of this procedure."

**Completed Action List:**
* Perform by RICE, LEON D on September 12, 2005 11:59 PM
* Order by FERNANDEZ, ROSEMARIE on September 12, 2005 11:07 PM
* VERIFY by HILLMAN, GERALD M on September 13, 2005 6:56 PM

Exhibit - H

Patient: Mark Reed

Date: 09/13/2005    Time: 00:29

## Discharge Instructions

**Detroit Medical Center**

Detroit Receiving Hospital - Emergency Department
4201 St. Antoine
Detroit, MI   48201
(313)745-3356

**IMPORTANT:** We examined and treated you today on an emergency basis only. This was not a substitute for, or an effort to provide, complete medical care. In most cases, you must let your doctor check you again. Tell your doctor about any new or lasting problems. We cannot recognize and treat all injuries or illnesses in one Emergency Department visit. If you had special tests, such as EKG's or X-rays, we will review them again within 24 hours. We will call you if there are any new suggestions. The following are the problems we have identified and the treatment recommended.  After you leave, you should **follow the instructions below.**

You were treated today by ROSEMARIE FERNANDEZ, MD.

## THIS INFORMATION IS ABOUT YOUR ILLNESS OR INJURY

AC SEPARATION (Acromio-Clavicular Separation).

This injury is the separation of two of the bones in your shoulder.  The separation tore some of the ligaments (rope-like tissue) that hold the shoulder firmly together.  It should heal well if protected.

**Do the following:**
- Apply ice packs for 15 to 20 minutes every hour during the first few days to help the pain and reduce the swelling.
- Limit the use of your shoulder.

**Call your doctor if you have:**
- numbness, tingling or increased pain in your arm.
- no improvement in 3 days.
- any new or severe symptoms.

## THIS INFORMATION IS ABOUT YOUR MEDICINE

IBUPROFEN (Motrin, Advil, Rufen, Nuprin).

Take this medicine **with food** in the following dose: 400 mg by mouth every 6 hours if needed for pain or swelling.

This medicine will reduce fevers, control pain and reduce inflammation (redness and swelling).  Side effects may include: an upset stomach, heartburn or drowsiness.  Allergy would show up as: **rash or itching, wheezing or shortness of breath.**

**Follow these instructions:**
- Store this medicine away from heat, moisture or direct light.
- If you miss a dose, take it as soon as possible.  If it is within 4 hours of your next dose (or within 8 hours if you are taking it once or twice a day), skip the missed dose. Do not double the doses.
- Take this medicine with food to avoid an upset stomach.
- **Do not take aspirin or naproxen or ketoprofen** while taking this medicine. (Check the labels on over-the-counter medicines.)

**Call your doctor if you have:**
- any sign of allergy.

Patient: Mark Reed

Date: 09/13/2005     Time: 00:29

- any new or severe symptoms.

## HYDROCODONE & ACETAMINOPHEN (Vicodin, Lortab, Lortab elixir, Norco, Zydone, Anexsia, Anolor, Bancap HC)

Take this medicine by mouth in the following dose: 1-2 tablets every 4 to 6 hours if needed for pain. Do not take more than 5 tablets per day (24 hours).

This is a mixture of medicines (hydrocodone and acetaminophen) used to relieve moderate to severe pain. Hydrocodone is a pain reliever related to codeine. Acetaminophen is a less potent pain reliever. Together the medicines provide better pain relief than each does on its own. This medicine may be used for other reasons, as prescribed by your doctor.

**Side effects** may include:
- sleepiness
- upset stomach, nausea or vomiting
- constipation (hard stools)
- dry mouth
- muscle twitches
- dizziness
- decreased urination
- decreased sex drive
- decreased appetite

Other side effects may occur, but are not as common.

Allergy would show up as: **rash or itching, wheezing or shortness of breath.** This medicine can be habit forming if used for a long period of time.

**Follow these instructions:**
- Talk to your doctor **before** taking other medicines (including over-the-counter medicines). Look at the acetaminophen content on over-the-counter medicines. Talk with your doctor before taking additional acetaminophen.
- Do not change the dose or stop taking this medicine without talking with your doctor.
- Sit or stand **slowly** to avoid dizziness.
- Drink more water and increase the fiber in your diet to prevent constipation.
- Take this medicine with **food or milk** to avoid an upset stomach.
- Store this medicine away from heat, moisture or direct light.
- If you miss a scheduled dose of this medicine, take it as soon as you remember. If it is almost time for your next dose, skip the missed dose. Do not take a double dose to make up for the missed one.
- Watch for signs of dependence. They include:
  - feeling that you "cannot live without this medicine".
  - you need more of this medicine than before to get the same relief.
- Do not drink alcohol, drive or operate machinery while taking this medicine.

Talk with your doctor before taking any other medicines (including herbals) as you may require additional monitoring especially:
- MAO inhibitor such as isocarboxazid (Marplan), phenelzine (Nardil), or tranylcypromine (Parnate). Dangerous side effects can occur.
- any antidepressants
- antihistamines (cold or allergy medicines used to reduce itching, sneezing and runny nose)
- sleeping pills, tranquilizers or sedatives such as phenobarbital (Solfoton, Luminal), amobarbital (Amytal), secobarbital (Seconal), alprazolam (Xanax), diazepam (Valium), lorazepam (Ativan), flurazepam (Prosom) and temazepam (Restoril)

Portions Copyrighted 1987-2005, LOGICARE Corporation Page 2 of 4

Patient: Mark Reed

Date: 09/13/2005    Time: 00:29

* chlorpromazine (Thorazine), fluphenazine (Prolixin), thioridazine (Mellaril), and prochlorperazine (Compazine)
* belladonna (Donnatal), clidinium (Quarzan), dicyclomine (Bentyl, Antispas), hyoscyamine (Levsin, Anaspaz), ipratropium (Atrovent), propantheline (Pro-Banthine) and scopolamine (Transderm-Scop)

**Call your doctor if you have:**
* any sign of dependence.
* any sign of allergy.
* increased pain not helped by the pain medicine.
* slow, weak breathing.
* seizures.
* yellow skin or eyes.
* unusual tiredness or dizziness.
* unusual bleeding or bruising.
* any new or severe symptoms.
*

## THIS INFORMATION IS ABOUT YOUR FOLLOW UP CARE

Call as soon as possible to make an appointment in 5 days at the Orthopedic Clinic - DRH/UHC. You can reach the Orthopedic Clinic - DRH/UHC at (313)745-4230, 4201 St. Antoine, 6A UHC , Detroit, MI 48201 . If you have any problems or concerns before the appointment, call the Clinic.

If you have a primary care doctor and have been referred to a specialty clinic (neurology, surgery, orthopaedic, cardiology, etc.), please contact your doctor's office as soon as possible to determine your need for prior authorization.

Should you require assistance in choosing a Primary Care Physician or scheduling an appointment with a specialist, please call the Physician Referral Service at 1-888-DMC-2500 to speak to a Referral Specialist.

## THIS INFORMATION IS ABOUT MEDICAL EQUIPMENT AND TREATMENTS .

### ARM SLING.
An arm sling will put the weight of your injured arm onto your opposite shoulder. It keeps the injured arm raised up. This helps reduce pain and swelling.

**Do the following:**
* Adjust the sling to keep your forearm level and comfortable.
* Make sure that the hand of the injured arm does not droop down. That could stretch some nerves in the wrist.
* Support your hand in the sling or use the thumb strap in the sling.

### R.I.C.E. THERAPY.
This stands for the first aid for injuries (Rest, Ice, Compression, Elevation). This reduces swelling and pain and will help you heal. Use this for sprains, bruises, strains, dislocations or simple bone breaks.

**Rest:**
This will prevent more injury and reduce pain and bleeding.
* Stop using your injured part right away.

**Ice:**

**Patient: Mark Reed**

**Date: 09/13/2005     Time: 00:29**

This reduces bleeding and swelling. It causes the blood vessels to get smaller. The less blood around an injury, the quicker it will heal.
- Lay a towel or washcloth over your injured part.
- Place the ice bag (or plastic bag filled with ice) on the towel or washcloth.
- Keep the ice on your injury for about 15 to 20 minutes.
- Remove the ice for 15 minutes.
- Repeat this every 3-4 hours for the next couple of days.

**Compression:**

This slows bleeding and limits the amount of blood around the injury. This will reduce swelling.
- Wrap an Ace bandage firmly around the injury. Start below the injury and end above the injury.
- Do not wrap it too tight. Signs of a tight bandage are numbness, pain or a blue skin color below the injury.

**Elevation:**

This reduces swelling and pain.
- Raise your injured area above the level of your heart. Prop it up with pillows, if you can.

**YOU ARE THE MOST IMPORTANT FACTOR IN YOUR RECOVERY.** Follow the above instructions carefully. Take your medicines as prescribed. Most important, see a doctor again as discussed. If you have problems that we have not discussed, **call or visit your doctor right away.** If you cannot reach your doctor, return to the Emergency Department.

**"I have received this information and my questions have been answered. I have discussed this plan with the nurse or physician to my satisfaction."**

_____

Mark Reed or Responsible Person

**Mark Reed or Responsible Person has received this information and tells me that all questions have been answered.**

_____

Staff Signature

**SEATBELTS**

There is no doubt that seatbelts save lives. Every day in the Emergency Department we see how people without seatbelts are more severly hurt. Remember under Michigan law seatbelts are required.

**CIGARETTE SMOKING**

This is surely a great health problem! The facts are clear that cigarette smoking will shorten ones life. Smoking can cause many illnesses. If you need help to quit smoking, talk to your regular doctor.

Exhibit - I