UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK REED, #151290,

   Plaintiff,        Case No.: 06-CV-10934

               DISTRICT JUDGE VICTORIA A ROBERTS
vs.              MAGISTRATE JUDGE STEVEN D. PEPE

GEORGE PRAMSTALLER, RICHARD D. RUSSELL,
BUREAU OF HEALTH CARE MICHIGAN
DEPARTMENT OF CORRECTIONS, CAROLYNN DUBUC,
CORRECTIONAL MEDICAL SERVICES, INCORPORATED,
MICHIGAN DEPARTMENT OF CORRECTIONS, ANDREW JACKSON,
S. VADLAMUDI, JUSTINA NZUMS and RUTH INGRAM,

   Defendants.
             /

**REPORT AND RECOMMENDATION ON CMS'S MOTION TO DISMISS (DKT. #43), THE MDOC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. #42) AND DEFENDANT VADLAMUDI'S MOTION FOR SUMMARY JUDGMENT (DKT. #60)**

On March 1, 2007, Plaintiff commenced this action, seeking relief under 42 U.S.C. § 1983 for violations of his civil rights while incarcerated in the Michigan Department of Corrections ("MDOC") system (Dkt. #1). In his Complaint, Plaintiff alleges that, while incarcerated at the Mound Correctional Facility, Defendants denied him appropriate medical care in violation of the Eighth Amendment of the Constitution (Dkt. #1, p. 5).[1] The Court dismissed

---

[1] On August 23, 2007, this Court granted Plaintiff's motion for voluntary partial dismissal and motion to amend complaint (Dkt. #25). While an August 23, 2007, request to file

1

this suit *sua sponte* on April 11, 2006, under the total exhaustion rule because "plaintiff failed to name any of the defendants that he wishes to sue in his Step I grievance" (Dkt. #6, p. 4). In light of the Supreme Court's decision in the matter of *Jones v. Bock*, --- U.S. ----, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) and because this Court had dismissed this Complaint *sue sponte*, the Sixth Circuit reversed and remanded for further proceedings in light of *Jones* (Dkt. #17). [2]

On October 22, 2007, Defendants MDOC, Russell, Pramstaller, and Bureau of Health Care Services ("the MDOC Defendants") moved under Fed. R. Civ. P. 56(b) for summary judgment for failure to exhaust (Dkt. #42). Defendant Correctional Medical Services, Inc. ("CMS") filed a motion to dismiss on similar grounds pursuant to 42 U.S.C. § 1997e(a) and Rule 12(b)(6) on the same date (Dkt. #43). On January 22, 2008, Defendant Seetha Valamundi moved for summary judgment under Rule 56(b) and pursuant to Rule 10(c) moved to adopt by reference the motion for summary judgment and supporting brief based on lack of exhaustion filed on October 22, 2007 (Dkt. #60). All pretrial matters were referred under 28 U.S.C. § 636(b) on November 14, 2007. (Dkt. #44). For the reasons indicated below, it is **RECOMMENDED** that Defendants' motions be **GRANTED**, and Plaintiff's Complaint be dismissed.

---

an amended complaint appears on the docket (Dkt. #26), it does not appear that an amended complaint was ever filed. Nevertheless, it appears that the purpose of the proposed amended complaint was simply to remove two unknown Defendants from Plaintiff's original complaint, John and Jane Doe. From a review of the docket, it is apparent that these Defendants were terminated on August 23, 2007.

[2] *Jones v. Bock*, --- U.S. ----, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) held that: (1) failure to exhaust is an affirmative defense under the PLRA that does not need to be specially plead in a complaint; (2) exhaustion is not per se inadequate simply because a defendant was not named in the grievances; and (3) where a complaint contains both exhausted and unexhausted claims, the court should proceed with the exhausted claims while dismissing the unexhausted claims, rather than dismissing the complaint in its entirety.

**I.     BACKGROUND**

In his Complaint, Plaintiff alleges that he was injured at 6:45 pm during a prison sporting event on September 12, 2005 (Complaint, Dkt. #1, ¶ 20). Health care refused to see him until 8:15 pm (Complaint, ¶ 26). He was not sent to the hospital until 10:15 pm (Complaint, ¶ 27). He was discharged from the hospital; he had AC separation. The doctor said it should heal well if protected and recommended an appointment with an orthopedic specialist (Complaint, ¶ 28). Upon returning to the prison, Plaintiff was placed on medical lay-in for two weeks (Complaint, ¶ 29). Plaintiff claims to have written a health care request on September 28 explaining that he was in pain; he wrote again on October 6 asking when he would be seen (Complaint, ¶ 30, 31). Plaintiff was seen for his annual health screen on October 12, 2005; the nurse set up an appointment with the doctor for October 21; he was also given Extra Strength Tylenol 500s. (Complaint, ¶ 32). Plaintiff had an x-ray of his shoulder taken on October 25. He received the radiology report on October 26, showing progression of the damage in his shoulder (Complaint, ¶ 34, 35). On December 1, 2005, Plaintiff was seen by an orthopedic specialist, who told Plaintiff that he would have headaches until his shoulder was fixed (Complaint, ¶ 37). Plaintiff had not received the operation as of January 10, 2006 (Complaint, ¶ 42).

Plaintiff has pursued six grievances through step three since his shoulder injury (*See* Grievance Inquiry Screen, Dkt. #42, Ex. A). Of those grievances, only NRF-05-10-1256-12d1 grieves the issues involved in this suit (Grievance NRF-05-10-1256-12d1, Dkt. #42, Ex.B). Plaintiff's other grievances relate to his pain while urinating, a missing money order, a persistent rash, a broken finger, and his desire for a job (*See* Dkt. #42, Exs. D-H). In NRF-05-10-1256-12d1 step one, filed October 13, 2005, Plaintiff did not name any of the Defendants to this

action (Dkt. #42, Ex. B, pg. 4).

## II. ANALYSIS

### A. The Legal Standards

Under the Prisoner Litigation Reform Act, a prison inmate cannot maintain a civil rights action challenging prison conditions if he did not first exhaust "such administrative remedies as are available." The Supreme Court clarified that a prisoner must follow the state corrections system's procedures and *properly* exhaust all administrative remedies before he may bring a cause of action in federal court. *Woodford v. Ngo*, 126 S. Ct. 2378 (2006). Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 2386. The *Woodford* Court explained:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Id.* at 2388. Thus, an untimely or otherwise improper grievance, even though appealed through all steps of a grievance procedure, does not fulfill the PLRA exhaustion requirement.

Prisoners at MDOC facilities are given the right to "[seek] redress for alleged violations of policy and procedure or unsatisfactory conditions," but prisoners making grievances must

4

follow certain rules and deadlines. PD Preamble. These requirements are laid out in MDOC Policy Directive, Prisoner/Parolee Grievances (the "Policy Directive" or "PD").

In *Jones*, the Supreme Court held that the PLRA does not require that a prisoner name all of the defendants in his grievances. *Jones*, 127 S Ct at 922. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 923. *Jones*, however, was based on a previous version of MDOC Policy Directive 03.02.130 that did not require that prisoners list names of potential defendants in their grievances. *Id.* at 916 (discussing policy effective November 1, 2000). Yet, that policy directive was changed prior to Plaintiff filing his Complaint or grievances.

The MDOC has specific administrative procedures that prisoners must follow to exhaust their administrative remedies. MDOC Policy Directive 03.02.130 lays out a three-step process that prisoners must complete before being considered to have exhausted their claims. (Dkt. #42, Ex. C, MDOC PD 03.02.130 (Effective December 19, 2003)). There are specific rules in PD 03.02.130 (such as time frames and content policies) that prisoners must follow, or else they face having their grievances rejected. Section T of P.D. 03.02.130 requires prisoners to include names of potential defendants in their grievances.

**B.    Factual Analysis**

Plaintiff only filed one grievance relating to the issues in this suit, grievance NRF-05-10-1256-12d1, dated October 13, 2005. That grievance does not name any of the Defendants here. The fact that the MDOC did not reject Plaintiff's grievance for failing to name the Defendants is not an endorsement of the correctness of that grievance. Where a prisoner fails to name all of the potential defendants, the MDOC has no way of knowing that names have been

5

left out until a prisoner names defendants in a lawsuit. It is the prisoner, and not the prison, that is in the best position to determine who is accusing of wrongdoing with regard to any alleged incident.

Because MDOC policy requires Plaintiff to name potential Defendants in his grievances, and because Plaintiff did not name any Defendants, he has not exhausted any claims against those Defendants.

Accordingly, it is **RECOMMENDED** that Defendants' motions be **GRANTED** and Plaintiff's Complaint be dismissed for failure to exhaust.

### III.  RECOMMENDATION

For the above stated reasons, it is **RECOMMENDED** that Defendants' motions be **GRANTED**, and Plaintiff's Complaint be dismissed. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this report and recommendation. *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections. A party may file a reply brief within 5 days of service of a response. The reply shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.

Date: January 30, 2007  
Ann Arbor, Michigan

s/Steven D. Pepe  
United States Magistrate Judge

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing *Report and Recommendation* was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 30, 2008.

s/ Alissa Greer  
Case Manager to Magistrate  
Judge Steven D. Pepe  
(734) 741-2298