UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MARK ANTHONY REED-BEY # 151290,**

        **Plaintiff,**                CASE NUMBER: 06-10934
                                            HONORABLE VICTORIA A. ROBERTS

**v.**

**GEORGE PRAMSTALLER,
RICHARD D. RUSSELL,
BUREAU OF HEALTH CARE
MICHIGAN DEPARTMENT OF CORRECTIONS,
CAROLYNN DuBUC,
CORRECTIONAL MEDICAL SERVICES, INC.,
MICHIGAN DEPARTMENT OF CORRECTIONS,
ANDREW JACKSON,
SEETHA VADLAMUDI,
JUSTINA NZUMMS, and RUTH INGRAM**

        **Defendants.**
_____/

**ORDER**

**I.    INTRODUCTION**

This matter is before the Court on three motions: (1) Defendant CMS's Motion for Summary Judgment (Doc. # 116); (2) Defendant George Pramstaller's Motion for Summary Judgment (Doc. # 119); and (3) Defendant Richard Russell's Motion for Summary Judgment. (Doc. # 120) For the following reasons, the Court **GRANTS** all of these motions. The Court also dismisses Reed-Bey's state law claims against CMS, Pramstaller, and Russell.

**II.    BACKGROUND**

The facts, as alleged by Plaintiff in his complaint, are as follows: Plaintiff, Reed-

1

Bey, an inmate at Mound Correctional Facility, injured his shoulder on September 12, 2005 during a prison sporting event. He was taken to Detroit Receiving Hospital that night and Dr. Rosemarie Fernandez examined him. Dr. Fernandez concluded that Reed-Bey suffered from an acromioclavicular separation ("AC separation"), or the separation of two of the bones in his shoulder, and ligament damage. The doctor's report also stated that Reed-Bey should be seen by an Orthopedic Specialist. He was placed on a two-week medical lay-in when he returned to Mound. He submitted a health care request form on September 28, 2005, and again on October 6, 2005, asking to be seen by a doctor for follow-up care.

On October 12, 2005, Defendant Justina Nzums ("Nurse Nzums") scheduled an appointment for Reed-Bey to see Defendant, Dr. Seetha Vadlamudi. Plaintiff says Dr. Vadlamudi did not want to see him on October 21, 2005 (the scheduled day). Instead, he was seen on October 25, 2005 by an X-ray technician who took X-rays of his shoulder. He says he learned that the AC Separation had progressed. Reed-Bey continued to make requests for treatment. On December 1, 2005, an Orthopedic Specialist examined Reed-Bey. The specialist concluded that the shoulder required surgery. Reed-Bey says that he sent a letter to the office of Russell and Pramstaller, after this appointment, complaining about the prison's delay in providing medical treatment, and asking for assistance. He says that he sent a second complaint to Defendants, which was received on March 31, 2006.

On December 2, 2005, Dr. Vadlamudi saw Reed-Bey and informed him that she was sending a request to Correctional Medical Services, Inc., for approval of the operation. Reed-Bey continued to send health care request forms to prison officials

requesting approval for surgery.

On March 1, 2006, Reed-Bey filed a Complaint pursuant to 42 U.S.C. § 1983, alleging medical malpractice and a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, as applied to state actors by the Fourteenth Amendment. He named as defendants the Michigan Department of Corrections ("MDOC"); Correctional Medical Services ("CMS"), a private corporation that contracts with MDOC to provide health care to incarcerated persons, along with several individuals, including, for purposes of these motions, former Chief Medical Officer for MDOC, George Pramstaller, and former Administrator of the Bureau of Health Care Services ("BHCS") of MDOC, Richard Russell.

Reed-Bey states in his Complaint that he filed three grievance forms with prison officials throughout his ordeal. On October 10, 2005 Reed-Bey filed a Step I grievance complaining of the lack of follow-up care. When Reed-Bey did not hear from prison officials regarding his Step I grievance within fifteen days, he filed a Step II appeal. Nurses Nzums and Ingram denied Reed-Bey's Step I grievance. (Complaint, Exh. A) Reed-Bey filed a Step III appeal with the Director of Prisons. Nurse Carolynn DuBuc belatedly denied Reed-Bey's Step II appeal, and the Director of Prisons later denied Reed-Bey's Step III appeal on the merits. On April 10, 2006 Reed-Bey's injured shoulder was operated on.

On April 11, 2006 this Court dismissed Reed-Bey's Complaint for failure to exhaust administrative remedies because Reed-Bey did not name all Defendants in any of his grievances. *Reed-Bey v. Pramstaller*, No. 06-10934, 2006 WL 932299 (E.D. Mich. Apr. 11, 2006). The Sixth Circuit Court of Appeals vacated the Court's Order in light of

the Supreme Court's decision in *Jones v. Bock*, 549 U.S. 199 (2007), and remanded the case to this Court. (Doc. # 17)

On remand this Court again dismissed for failure to exhaust administrative remedies, this time finding that Reed-Bey failed to comply with prison grievance procedures, namely the 2003 MDOC Policy Directive requiring an aggrieved prisoner to list the names of all those involved in the issued being grieved. *Reed-Bey v. Pramstaller*, No. 06-10934, 2008 WL 2157063 (E.D. Mich. May 21, 2008). The Sixth Circuit again reversed, finding that, by considering Reed-Bey's grievances on the merits and overlooking its own procedural bar, Defendants should not benefit from this procedural bar. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 326 (6th Cir. 2010).

### III.     ARGUMENTS AND ANALYSIS

In its motion for summary judgment, CMS argues that Reed-Bey's only claim against it is one for vicarious liability, and that vicarious liability is inapplicable to civil rights actions under 42 U.S.C. § 1983. CMS further contends that even assuming it could be held liable for the actions of its employees, the individuals named in Reed-Bey's complaint were not agents or employees of CMS when the events that led to this action occurred. CMS states that Reed-Bey failed to allege that his injury resulted from any CMS policy in place at the time. (*Id.* ¶ 18) Finally, CMS contends that Reed-Bey cannot show that CMS subjected Reed-Bey to treatment that would give rise to a cause of action under § 1983.

In their motions, Pramstaller and Russell claim they are entitled to qualified immunity because they were not directly involved in the treatment of Reed-Bey's injury. They contend that the claim against them must be based on a theory of *respondeat*

4

*superior*, and such theory is insufficient to state a cause of action under § 1983. They argue that Reed-Bey's claim must ultimately fail because he cannot show that they were deliberately indifferent to his medical needs because they did not know of and disregard an excessive risk to his health or safety. *Farmer v. Brennan*, 511 U.S. 824, 837 (1994). Defendants also contend that the Court should dismiss Reed-Bey's Fourteenth Amendment claims, as well as his state law claims against them.

### A. Legal Standard

The Court will grant summary judgment in favor of the moving party if that party establishes that "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]hen a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(e)(2). The Court views the evidence in favor of the non-moving party. *Leahy v. Trans Jones, Inc.,* 996 F.2d 136, 138 (6th Cir. 1993). However, the evidence supporting the plaintiff's position must be more than a mere scintilla; it must be sufficient for the jury to reasonably find in favor of the plaintiff. *Liberty Lobby*, 477 U.S. at 252. "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict- whether there is evidence upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed." *Id.* (citation and internal quotation marks omitted) (emphasis in original).

### B. CMS's Motion for Summary Judgment

The factual basis for Reed-Bey's claim against CMS is CMS's purported denial or delay of proper health care to Reed-Bey after he injured his shoulder. Reed-Bey states that CMS agents or employees failed to follow the instructions of his outside treating physicians and that they "interfered with his treatment for purely financial reasons, thereby denying his rights under the Eighth Amendment of the U.S. Constitution." (Complaint ¶ 12)

Although the government is obligated to provide medical care to incarcerated individuals, to prove an Eighth Amendment violation of a prisoner's right to medical treatment, the plaintiff prisoner must show that the defendant was deliberately indifferent to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), the Supreme Court discussed the mental state required to show deliberate indifference:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* Thus, to succeed on a claim of deliberate indifference, Reed-Bey must show that defendants acted with a sufficiently culpable state of mind, *i.e.*, that defendants acted deliberately and "intended to chastise or deter" him by denying or delaying medical care, and he must show that such punishment was cruel and unusual. *See Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991). At a minimum, Reed-Bey must show that the conduct involved more than ordinary lack of due

care for his health and safety. *Id.* at 299.

Artificial entities, such as corporations, can act only through their agents or employees. *Braswell v. United States*, 487 U.S. 99, 110 (1988); *In re NM Holdings Co., LLC*, –F.3d–, 2010 WL 3782187, at *6 (6th Cir. Sept. 30, 2010) (quoting *Upjohn Co. v. N.H. Ins. Co.*, 438 Mich. 197, 476 N.W.2d 392, 400 (1991)). Therefore, in order to hold CMS liable for the actions of its agents, Reed-Bey must show that it is vicariously liable for those actions. However, corporations cannot be held liable under § 1983 on a theory of vicarious liability. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (citing *Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978)). The Supreme Court announced this principle in *Monell*, with regard to municipal corporations. In *Street*, the Sixth Circuit extended the principle to private corporations, such as CMS. *See id*. ("*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well.").

Although a corporation cannot be held vicariously liable for the actions of its agents, a corporate defendant can be sued under § 1983 on the ground that the defendant had in place at the time of the injury, a policy, custom, or practice that caused a deprivation of a plaintiff's constitutional rights. *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993); *Starcher v. Corr. Med. Sys., Inc.*, 7 Fed.Appx. 459, 2001 WL 345810, at *5 (6th Cir. Mar. 26, 2001); *Moffat v. Mich. Dep't of Corr.*, 2010 WL 3906115, at *9 (E.D. Mich. May 21, 2010). "Specifically, a plaintiff must identify the policy, connect the policy to the defendant and show that the particular injury was caused because of the

7

execution of that policy." *Moffat*, 2010 WL at *9 (citing *Garner*, 8 F.3d at 363-64). "Such a requirement ensures that a [corporation] is held liable only for those deprivations resulting from the decisions of...those officials whose acts may fairly be said to be those of the [corporation]." *Gregory v. Shelby Cty., Tenn.*, 220 F.3d 423, 441 (6th Cir. 2000).

"[T]he 'policy' requirement is meant to distinguish those injuries for which the [corporation] is responsible under § 1983, from those injuries for which the [corporation] should not be held accountable." *Id.*; *see also Meyers v. City of Cincinnati*, 14 F.3d 1115, 117 (6th Cir. 1994) ("*Monell* is a case about responsibility. ... The official policy requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.") (emphasis in original). Accordingly, to survive a summary judgment motion, Reed-Bey must demonstrate a genuine issue of material fact as to whether the aggravation of his AC separation was the result of a policy or custom of CMS.

Reed-Bey does not identify any policy, custom or practice of CMS that resulted in the deprivation of his Eighth Amendment rights. Instead, he alleges that CMS employees refused to provide him medical services after his shoulder injury was diagnosed. Reed-Bey does not argue that Defendant's actions were the result of a policy, custom, or practice, but instead argues that CMS was directly involved in his medical care. This argument fails in light of the principle, recognized in this circuit, that corporations can act only through human agents.

*See Diamond Club v. Ins. Co. of North America*, No. 91-3277, 1993 WL 170964, at *4 (6th Cir. May 20, 1993) (per curiam).

Because Reed-Bey has not introduced any evidence to demonstrate a genuine issue of material fact as to whether his injury was the result of a policy, custom, or practice of denying or delaying needed medical care, CMS is entitled to judgment on Reed-Bey's claim against it. *See, e.g.*, *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005); *Vickory v. Allwood*, No. 07-13419, 2010 WL 2680643, at *3 (E.D. Mich. July 6, 2010) ("The second amended complaint is devoid of any allegation that the execution of a purported policy, practice or procedure of CMS resulted in the violation of plaintiff's Eighth Amendment rights. ... Therefore, plaintiff's § 1983 claim against CMS is dismissed for his failure to state a claim upon which relief may be granted."); *Velez v. Mich. Dep't of Corr.*, No. 09-10519, 2010 WL 1254852, at *2 (E.D. Mich. Mar. 28, 2010) (same).

Moreover, Reed-Bey does not contest the facts contained in CMS's affidavit attached to its motion. (Doc. # 116, Exh. A) In this affidavit, CMS states that the employees and/or agents listed in Reed-Bey's complaint were not employed by CMS at the time of the events alleged in the complaint. (*Id.* at p. 2) Thus, Reed-Bey cannot show that CMS agents or employees were involved in his events. CMS is entitled to judgment on this ground as well. *See Reilly v. Vadlamudi*, No. 09-13832, 2010 WL 2730751, at *1 (E.D. Mich. July 9, 2010) ("Further, the plaintiff has not contested the facts contained in CMS's affidavit of non-involvement, which establish that the individual defendants were not agents, servants or employees of CMS at the time of the events at issue. The Court

9

therefore will also dismiss Reilly's Section 1983 claims against CMS.").

### C. The Pramstaller and Russell Motions for Summary Judgment

Reed-Bey sued Pramstaller and Russell in their official and individual capacities. In his complaint, Reed-Bey does not allege that Defendants Pramstaller and Russell were directly involved in any decisions regarding Reed-Bey's medical care. Russell, who was the Administrator of BHCS at the time in question, and Pramstaller, who was the Chief Medical Officer for MDOC at the time in question, argue that they were not directly involved in Reed-Bey's medical care after he injured his shoulder. Russell submits an affidavit stating that as an Administrator at BHCS he was "not responsible for, and [was] specifically restricted from, making any clinical decisions regarding any and all care provided to prisoners." (Doc. # 120, Exh. 1) He also says that he had no knowledge of Reed-Bey's medical condition and care, and made no decisions regarding that care. (*Id.*) Similarly, in his affidavit, Pramstaller states that he reviewed BHCS's files and could not find any correspondence addressed to him concerning Reed-Bey, had no personal knowledge of Reed-Bey's medical condition or care, and did not make any decisions regarding that care. (Doc. # 119, Exh. 1) They both assert the affirmative defense of qualified immunity from suit.

In his response, Reed-Bey contends that he wrote letters to the office of George Pramstaller and Richard Russell complaining about the delay in treatment and that, as a result, Defendants were fully aware of his serious medical needs and failed to act. (Doc. # 121, p. 3) He provides to the Court a response from "Bureau of Health Care Services - Central Office," not from either

Defendant, as proof that Defendants had personal knowledge of his medical condition. Reed-Bey also contends that Defendants waived their immunity defense by not raising it in the answer to his complaint. (*Id.* at 4)

The Court finds that Defendants need not even seek the protection of qualified immunity in their individual capacities; regardless, Werdlow's allegations do not establish that Pramstaller and Russell violated his constitutional rights. *See Saucier v. Katz*, 533 U.S.194, 201 (2001), *receded from on other grounds by Pearson v. Callahan*, 129 S.Ct. 808 (2009). In addition, Reed-Bey fails to establish that there is a genuine issue of material fact regarding their official capacity liability.

As an initial matter, Defendants are not liable in their official capacities as MDOC employees; Reed-Bey fails to demonstrate that the aggravation of his injury was a direct result of MDOC's policy or custom. *See Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989) (observing that a suit against an individual in his official capacity is essentially a suit against the local government unit so that the allegedly unconstitutional action must be based on a policy or custom of the government entity for liability to attach); *Beckett v. Ford*, 384 Fed.Appx. 435, 2010 WL 2617077, at *18 (6th Cir. June 24, 2010).

Although Defendants need not raise a defense of qualified immunity, the Court notes that they did not waive the defense by failing to raise it in an answer, and instead raising it in a motion for summary judgment. *See English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) ("[A] qualified immunity defense can be raised at various stages of the litigation including at the pleading stage in a motion to

dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial.").

Qualified immunity is an affirmative defense which "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In a qualified immunity case, "[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). "Stated differently, a defendant enjoys qualified immunity on summary judgment unless the facts alleged and the evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir. 2010) (citation and internal quotation marks omitted). If a reasonable juror could not find that the defendant violated a constitutional right, the analysis proceeds no further and the defendant need not seek the protection of qualified immunity. *Id.*

Once qualified immunity is raised as a defense to the action, the burden is on the plaintiff to demonstrate that the officials are not entitled to immunity from suit. *Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010). The two-part burden outlined above is a heavy one for the plaintiff to overcome. *See Goss v. Pirtle*, 245 F.3d 1151, 1155 (10th Cir. 2001) (citation and internal quotation marks omitted).

In *Saucier,* the Supreme Court mandated that courts consider prongs one and two of this two-part analysis in sequential order. Recently, in *Pearson,* 129 S.Ct. at 818, the Supreme Court abandoned this mandatory sequence, leaving it within a court's discretion to undertake the two-part analysis in which ever order it deems most appropriate. "However, because *Pearson* left in place *Katz*'s core analysis, all Pre- *Pearson* case law remains good law." *Aldini*, 609 F.3d at 863 (citing *Jones v. Byrnes*, 585 F.3d 971, 975)). "Evaluating the defense of qualified immunity on a motion for summary judgment requires that the court 'adopt the plaintiff's version of the facts.'" *Drogosch v. Metcalf*, 557 F.3d 372, 377 (6th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. 372 (2007)).

The Court concludes Reed-Bey failed to raise a genuine issue of fact demonstrating that Defendants, as supervisory officials, caused a violation of Reed-Bey's constitutional rights. Therefore, Defendants are entitled to dismissal.

The Sixth Circuit "has held that § 1983 liability must be based on more than respondeat superior, or the right to control employees." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (citing *Hays v. Jefferson Cty.*, *Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)). Supervisory officials are personally liable in damages only for their own unconstitutional behavior. *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989). In order for liability to attach to Russell and Pramstaller, in their roles as supervising officials, Reed-Bey must show that they "did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on." *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999). Reed-Bey must establish, at a minimum, that they "either encouraged the

specific incident of misconduct or in some other way directly participated in it." *Hays*, 688 F.2d at 874. Liability must be based on "active unconstitutional behavior." *Robinson*, 167 F.3d at 1048.

Reed-Bey's complaint is based on Defendants' failure to act in their roles as supervisors. He alleges that "[a] supervisor who fails to act to a prisoner['s] serious medical needs after becoming aware that a problem exist[s], has violated clearly established statutory and constitutional law." (Doc. #121, p. 3) This argument is foreclosed, however, by well established law. *See Grinter v. Knight*, 532 F.2d 567, 576 (6th Cir. 2008) ("The denial of administrative grievances or the failure to act by prison officials does not subject supervisors to liability under § 1983.") (citation and internal citation omitted); *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998) ("In *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (1989), this Court embraced the proposition that supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act. Instead the liability must be based upon active unconstitutional behavior."); *Leach*, 891 F.2d at 1246 (a supervisor is not liable for inaction where he or she knew or should have known of widespread violations by subordinates).

Pramstaller and Russell submitted affidavits attesting to their lack of personal involvement in Reed-Bey's allegations of delayed medical treatment. Both defendants say they lacked knowledge of Reed-Bey's medical condition at the time of the events in question. Reed-Bey's evidence does not establish their direct involvement as required for a finding of liability. *See Knight*, 532 F.3d at 575 ("'Because § 1983 liability cannot be imposed under a theory of *respondeat*

14

*superior*, proof of personal involvement is required for a supervisor to incur personal liability.'") (quoting *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 n. 3 (6th Cir. 2005)). Specifically, he proffers two letters. The first is a letter he wrote to a prison official in the Director's Office of the Prisoners Affair Section, stating that he was awaiting a response from Russell or Pramstaller concerning the denial of medical treatment, and the second is a response from the BHCS Central Office stating that correspondence was received regarding his medical care. (See Doc. #121, Exhs. A, B) Neither letter establishes that Russell or Pramstaller personally received correspondence from Reed-Bey, was aware of his medical condition and care, or had the opportunity to review his medical file.

Reed-Bey failed to satisfy his burden to set forth specific facts showing that Russell and Pramstaller were directly involved in any of the decisions regarding his medical care or that they "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays*, 668 F.2d at 874. Thus, Defendants did not violate Reed-Bey's constitutional rights. The Court grants summary judgment to Defendants Russell and Pramstaller on Reed-Bey's constitutional claims.

Next, Russell and Pramstaller contend that the Court should dismiss Reed-Bay's state law claims, alleging medical malpractice. Defendants argue that the Court has discretion to decline supplemental jurisdiction if the Court dismisses all claims over which it has original jurisdiction. Defendants further contend that they are entitled to judgment on the state law claims on the merits because Defendants were not directly involved in Reed-Bey's medical care and,

thus, were not the proximate causes of his injury.

The Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). Thus, Reed-Bey's state law claims against Pramstaller, Russell and CMS are dismissed without prejudice.

## IV. CONCLUSION

The Court **GRANTS** summary judgment in favor of Defendants CMS, Pramstaller, and Russell. The Court **DISMISSES WITHOUT PREJUDICE**, Reed-Bey's state law claims against CMS, Pramstaller, and Russell.

**IT IS ORDERED.**

    /s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: December 6, 2010

---

The undersigned certifies that a copy of this document was served on the attorneys of record and Mark Anthony Reed-Bey by electronic means or U.S. Mail on December 6, 2010.

s/Linda Vertriest
Deputy Clerk

---