UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK ANTHONY REED-BEY, #151290

        Plaintiff,

v.

GEORGE PRAMSTALLER, ET AL.,

        Defendants.
        _____/

Case No. 06-10934

District Judge Victoria A. Roberts
Magistrate Judge R. Steven Whalen

**REPORT AND RECOMMENDATION**

On March 1, 2006, Plaintiff Mark Anthony Reed-Bey, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), filed a *pro se* civil rights complaint under 42 U.S.C. § 1983, alleging deliberate indifference to his medical needs, in violation of the Eighth Amendment. This Court dismissed his complaint twice based on a failure to exhaust administrative remedies, but the Sixth Circuit reversed and remanded each time. Before the Court at this time are Plaintiff's motion for partial summary judgment [Doc. #164], and a motion for summary judgment filed by Defendants Carolyn DuBuc, Andrew Jackson and Dr. Seetha Vadlamudi [Doc. #169] , which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend as follows:

      (1) That the Defendants' motion [Doc. #169] be DENIED as to the Eighth Amendment claim against Dr. Vadlamudi.

      (2) That the Defendants' motion [Doc. #169] be GRANTED as to Defendants DuBuc and Jackson.

-1-

(3) That the Defendants' motion [Doc. #169] be GRANTED as to Plaintiff's state law claim of medical malpractice, to the extent that the Court decline supplemental jurisdiction and dismiss the claim without prejudice.

(4) That the Plaintiff's motion [Doc. #164] be DENIED.

## I. PROCEDURAL HISTORY

Plaintiff filed his complaint on March 1, 2006. On April 11, 2006, the Court *sua sponte* dismissed the complaint for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a). [Doc. #6]. On April 25, 2007, the Sixth Circuit reversed and remanded, based on the Supreme Court's intervening decision in *Jones v. Bock*, 549 U.S. 199 (2007).

On January 30, 2008, Magistrate Judge Steven D. Pepe, to whom this case was originally referred, filed a Report and Recommendation ("R&R"), recommending that Defendant Vadlamudi and other MDOC Defendants be granted summary judgment for failure to properly exhaust administrative remedies under the relevant MDOC policy directives. [Doc. #68]. Specifically, Magistrate Judge Pepe found that the Plaintiff did not name the Defendants in his grievances. On May 21, 2008, the Court accepted this R&R and granted summary judgment, again dismissing the case without prejudice [Doc. #78]. The Plaintiff again appealed to the Sixth Circuit, and on April 28, 2010, the Sixth Circuit reversed in a published opinion. *Reed-Bey v. Pramstaller, et al.*, 603 F.3d 322 (6th Cir. 2010).

Following this second remand, the case was reassigned and referred to me on May 3, 2011 [Doc. #163]. Discovery proceeded, and on July 27, 2011, Plaintiff filed his motion for partial summary judgment [Doc. #164]. Defendants DuBuc, Jackson and Vadlamudi filed their motion for summary judgment on August 30, 2011 [Doc. #169].

## II. FACTS

Attached to the Defendants' motion as Exhibit A is the deposition transcript of the Plaintiff. Attached as Exhibit B are the Plaintiff's medical records. Attached as Exhibit C is the affidavit of Defendant Andrew Jackson, the former warden of the Mound Correctional Facility.

The Plaintiff testified that on September 12, 2005, he seriously injured his shoulder while playing basketball, stating that the bone "punctured straight through." *Plaintiff's Deposition*, 7-9. He was taken to the emergency room at Detroit Receiving Hospital. X-rays were taken, and he was told he had an "A/C separation."[1] He was instructed to follow up with the prison doctors when he returned, and was given a sling, or arm brace. *Id.*, 11. Upon his return to the facility, he saw a Nurse Greene, and was given a seven-day prescription for Vicodin. *Id.*, 12-13.

The Plaintiff testified that he never saw any medical personnel at the prison until October 12, 2005, when his physical was scheduled. *Id*. 15. He said that after the seven-day supply of Vicodin ran out, he simply "had to deal with the pain," and that the pain level between September 13 and October 12 was consistently a level "9" on a scale of 1 to 10. He described it as "If you've ever been shot by a bullet and it was hot when it first hit you, that's how it felt." *Id.*, 16-17. The Plaintiff wrote at least four medical "kites," or written requests to see a doctor during September. *Id.*, 15.

At the October 12 appointment, the nurse at first seemed unaware that Plaintiff had a problem with his shoulder. The Plaintiff did not see a doctor at that appointment, but Dr. Vadlamudi wrote a prescription for extra strength Tylenol, which reduced the pain from level "9" to level "6." *Id.*, 22-23.

---

[1] "A/C" refers to acromioclavicular separation.

X-rays were taken on October 21, and were reviewed by Dr. Vadlamudi on October 31. Plaintiff was scheduled to see a Dr. Mishra, apparently an orthopedist, on November 23, 2005, but that appointment was cancelled for unknown reasons. He finally saw Dr. Mishra at Duane Waters Hospital on December 1, 2005. Dr. Mishra prescribed a seven-day supply of Ultram for pain. *Id*. 25-26.

On December 2, 2005, the Plaintiff saw Dr. Vadlamudi for the first time. Dr. Vadlamudi prescribed Motrin at that time. *Id*., 28-30. He went to the Health Care office for an appointment on January 10, 2006, but the doctor did not show up. *Id*., 32. A surgery scheduled for February 15, 2006 was also cancelled. Dr. Mithra finally performed the surgery on April 12, 2006, at Foote Hospital. *Id*., 32-33. When he returned to the prison, Dr. Vadlamudi prescribed Ultram. *Id*., 38.[2]

The Plaintiff testified that Defendant DuBuc never treated him, and her only role was "the step 2 grievance response." *Id.* 53.

The medical records (Defendants' Exhibit B) are consistent with the Plaintiff's testimony. A note from an RN indicates that Plaintiff returned to prison from the Detroit

---

[2] The Sixth Circuit summed up the facts as follows:

"On September 12, 2005, Reed-Bey injured his shoulder during a prison basketball game, sufficiently badly that one of the bones was visibly out of place. That evening, an emergency-room physician diagnosed Reed-Bey with a Grade III acromioclavicular separation and ligament damage. The emergency-room physician discharged Reed-Bey later that night and recommended that he see an orthopedic specialist within five days.

"Prison officials did not send Reed-Bey to an orthopedic specialist until December 1, even though he requested follow-up care at least four times in the interim and even though an October 25 X-ray showed that the shoulder separation had worsened. On December 1, the specialist told Reed-Bey that his shoulder required surgery and that the shoulder pain and accompanying headaches-some lasting up to three days-would persist until doctors fixed his shoulder. Prison officials did not approve his shoulder surgery until some time after March 2006." *Reed-Bey*, 603 F.3d at 323.

Receiving emergency room on September 13, 2005, wearing an arm brace. It notes an "A/C separation." Pain medication was ordered. An entry by Dr. Vadlamudi on September 19 states, "reschedule to be seen ASAP."

The next medical note, written by an RN, is dated October 12, 2005, and recounts the Plaintiff's complaint that he "[hadn't] been seen by Dr. since I hurt my shoulder," and "I'm in pain and no one is doing anything about it." The next note, also written by an RN, notes a subjective complaint of "right shoulder pain with shoulder separation," and contains the observation, "Bone protrudes from right shoulder, AC." On October 31, 2005, Dr. Vadlamudi reviewed the x-ray, but did not see the Plaintiff. On December 2, 2005 (the date that Plaintiff testified he first saw Dr. Vadlamudi), Dr. Vadlamudi reviewed the chart, noted a "grade 4 A/C separation," and wrote, "F/U as needed."[3]

### III. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a

---

[3] I will assume that "F/U" means "follow up."

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

## IV. DISCUSSION

### A. Defendants' Motion [Doc. #169]

#### 1. Dr. Vadlamudi

Dr. Vadlamudi, a physician employed by the MDOC, is alleged to have been deliberately indifferent to the Plaintiff's serious medical needs, in violation of the Eighth Amendment. Under the Eighth Amendment, prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Estelle v. Gamble,* 429 U.S. 97, 103-104; 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A deliberate indifference claim has two

components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2001). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.*

Deliberate indifference to medical needs may be established by showing an interruption of a prescribed plan of treatment, or a delay in medical treatment. *Estelle v. Gamble, supra; Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). However, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th cir. 1976). *See also Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1999), citing *Estelle v. Gamble, supra*, 97 S.Ct. at 292 ("Deliberate indifference, however, does not include negligence in diagnosing a medical condition").

There can be no question that for purposes of this motion, Plaintiff had a "sufficiently serious" medical condition, and the Defendants do not argue otherwise. After all, he suffered an A/C separation and his bone was visibly protruding. Plaintiff has therefore met the objective prong of the Eighth Amendment deliberate indifference analysis.

As to the subjective prong, the record establishes that Dr. Vadlamudi was, in effect, the Plaintiff's primary care physician within the MDOC. The medical notes from September 13, 2005 clearly note the A/C separation, and the prescribing of Vicodin for a

period of seven days. In addition, Dr. Vadlamudi made an entry in Plaintiff's chart on September 19th to "reschedule to be seen ASAP." Finally, the Plaintiff sent no less than four requests to be seen for his shoulder/pain problems. Therefore, there is at least an issue of fact as to whether Dr. Vadlamudi "perceived facts from which to infer substantial risk to the prisoner," the risk being ongoing pain from a serious shoulder injury so severe that the bone was protruding. There is also evidence from which a jury could infer that Dr. Vadlamudi not only perceived the risk to Plaintiff, and his need for pain management, but disregarded it. Despite the Plaintiff's repeated requests to be seen by a doctor, he was not seen by *any* medical personnel for the month between September 13 and October 12, and after his seven-day supply of Vicodin ran out, he was reduced to using over-the-counter medication, which he testified was ineffective in controlling his pain. When he was finally seen by a nurse on October 12, she seemed unaware that he even had a shoulder problem, although he was at least given a prescription for pain at that time. And he did not see any medical doctor until he was examined by Dr. Vadlamudi on December 2, 2005.

Therefore, the Court should not grant summary judgment to Dr. Vadlamudi where there are issues of material fact as to whether she was aware of but deliberately indifferent to the Plaintiff's serious medical condition, resulting in unnecessary pain for over a month.

The Plaintiff also contends that the delay in scheduling his surgery constitutes an Eighth Amendment violation. I agree that given the apparent severity of the injury, the unexplained delays from the end of October, 2005 onward are troubling. However, the Plaintiff has proffered no evidence that Dr. Vadlamudi was responsible for those delays. Therefore, the Eighth Amendment claim against Dr. Vadlamudi should be restricted to

medical issues, including pain management, in September and October, 2005.

### 2. Defendants DuBuc and Jackson

At the time of the events giving rise to this complaint, Carolyn DuBuc was the Region III Health Care Administrator for the MDOC, and Andrew Jackson was the Warden of the Mound Correctional Facility. Neither had any personal involvement in the Plaintiff's medical care or in decisions regarding his medical care. Rather, the Plaintiff argues that they bear responsibility because of their high level administrative or supervisory positions. The claim against DuBuc is based on her having responded to Plaintiff's Step II grievance.

In *Monell v. Department of Social Services.,* 436 U.S. 658, 692 (1978) the Supreme Court specifically held that in a §1983 action, liability cannot be based on a theory of *respondeat superior*, or mere supervisory liability. *See also Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984)(at a minimum, a §1983 plaintiff must show that a supervisory official at least impliedly authorized, approved and knowingly acquiesced in the unconstitutional conduct of the offending subordinate).

Warden Jackson has submitted an affidavit (Defendants' Exhibit C) stating that as Warden, he "was not responsible for making any clinical decisions regarding any and all care provided to prisoners" (¶ 5), and that he "was not responsible for addressing any grievances related to medical issues; they were addressed by the Bureau of Health Care Services." (¶ 6). The Court dismissed Defendants Russell and Pramstaller because the Plaintiff "failed to satisfy his burden to set forth specific fact showing that Russell and Pramstaller were directly involved in any of the decisions regarding his medical care or that they 'implicitly authorized, approved, or knowingly acquiesced in the

unconstitutional conduct of the offending officers.'" [Doc. #126] (citation omitted). For the same reason, Defendant Jackson should be granted summary judgment.

The Plaintiff testified that Defendant DuBuc never treated or examined him, and that he never spoke to her. Rather, her role was limited to the Step II grievance response. *Plaintiff's Deposition*, 53. However, § 1983 liability may not be imposed on a defendant who merely denied or responded to an administrative grievance or failed to act upon information contained in a grievance. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999); *Lee v. Michigan Parole Board*, 2004 WL 1532563, at *2 (6th Cir. 2004); *Manney v. Monroe*, 151 F.Supp.2d 976 (N.D. Ill. 2001). Therefore, Defendant DuBuc should be granted summary judgment.

### 3.    Medical Malpractice Claim

The complaint also contains a claim of medical malpractice under Michigan law. Under M.C.L. § 600.2912b(1), a plaintiff must give the health care provider written notice not less than 182 days before the action is commenced. Michigan law also requires that a plaintiff "shall file with the complaint an affidavit of merit signed by a health professional...." M.C.L. § 2912d(1). *See Leonardson v. Peek*, 2009 WL 89647, *1 (E.D.Mich. 2009) ("Under Michigan statutory law, the requirements for a viable medical malpractice claim are substantial and involve, among other things, considerations of statutes of limitations, notices of intent, and affidavits of merit accompanying the complaint"(citing *Woodard v. Custer,* 476 Mich. 545, 554, 719 N.W.2d 842 (2006)). Because the Plaintiff has not alleged in his complaint that he complied with these requirements, and concedes that he did not, in fact, file a timely Notice of Intent or affidavit of merit, *see Plaintiff's Deposition*, 59, he has not stated a viable claim for medical malpractice against these Defendants in this Court. *Leonardson, supra*.

Nevertheless, rather than granting summary judgment on the merits, the more appropriate remedy is to decline supplemental jurisdiction pursuant to 28 U.S.C.A. § 1367(c)(4), because "there are other compelling reasons for declining jurisdiction." *Id*. Specifically, while the Plaintiff has not pled or demonstrated the procedural requirements of a Michigan malpractice claim, he may still be within the statutory limitations period for filing in State court. The Michigan statute of limitations is tolled while a complaint is pending in federal court, as long as the claim is not adjudicated on the merits and is dismissed without prejudice. *Roberts v. City of Troy*, 170 Mich.App. 567, 582, 429 N.W.2d 206 (1988). Indeed, in this Court's order dismissing Defendants Russell and Pramstaller [Doc. #126], supplemental jurisdiction was declined and the medical malpractice claims were dismissed without prejudice.[4]

### B. Plaintiff's Motion for Partial Summary Judgment [Doc. #164]

For the same reasons that I recommended that summary judgment be granted to Defendants DuBuc and Jackson, Plaintiff's motion for summary judgment as to those Defendants should be denied. I have also recommended that Defendant Vadlamudi's motion for summary judgment be denied on Plaintiff's Eighth Amendment claim because the Plaintiff has shown sufficient evidence to create a genuine issue of material fact. That does not mean, however, that the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.* A rational trier of fact could go one way or the other in deciding whether Dr. Vadlamudi was deliberately indifferent to the Plaintiff's medical needs, or whether he was merely negligent. Therefore, granting summary judgment to the Plaintiff is inappropriate.

---

[4] In this prior order, supplemental jurisdiction was declined pursuant to 28 U.S.C. § 1367(c)(3), i.e., there were no federal claims remaining.

-11-

## V.   CONCLUSION

Based on the above analysis, I recommend as follows:

(1) That the Defendants' motion for summary judgment [Doc. #169] be DENIED as to the Eighth Amendment claim against Dr. Vadlamudi.

(2) That the Defendants' motion for summary judgment [Doc. #169] be GRANTED as to Defendants DuBuc and Jackson.

(3) That the Defendants' motion [Doc. #169] be GRANTED as to Plaintiff's state law claim of medical malpractice, to the extent that the Court decline supplemental jurisdiction and dismiss the claim without prejudice.

(4) That the Plaintiff's motion for partial summary judgment [Doc. #164] be DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than

twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen<br>R. STEVEN WHALEN<br>UNITED STATES MAGISTRATE JUDGE

Date: February 15, 2012

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on February 15, 2012.

| | |
|---|---|
| Mark Reed, #151290<br>Gus Harrison Correctional Facility<br>2727 E. Beecher St<br>Adrian, MI 49221 | s/Johnetta M. Curry-Williams<br>Case Manager |